Revised, January 27, 2000

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 98-20815

SEATRAX, INC.,

Plaintiff-Appellant,

versus

SONBECK INTERNATIONAL, INC.,
PATRICK E. HUDSON, EDDIE H. HUDSON, JR.,
and MARK A. BOBECK

Defendants-Appellees,

Appeal from the United States District Court
for the Southern District of Texas

January 25, 2000

Before KING, Chief Judge, and POLITZ, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Seatrax, Inc., ("Seatrax") filed suit against Sonbeck, Inc., et al., ("Sonbeck") for trademark

infringement under federal law. Seatrax also filed suit under state law for misappropriation of trade

secrets and unfair trade practices by misappropriation. In a jury trial Seatrax prevailed on its

trademark infringement claim, but now appeals the magistrate judge's pretrial, evidentiary, and post-verdict rulings.  For reasons set forth below, we affirm the magistrate judge's rulings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

This case involves trademark infringement and allegations of misappropriation of trade secrets and unfair trade practices.  Seatrax is a Texas corporation that manufactures a brand of offshore marine cranes, known as "SEAKING," that are used in the oil and gas industry.    The SEAKING crane was first designed and manufactured by Mechanical Systems, Inc. ("MSI"), a company owned by William D. Morrow (Morrow), William R. Bath ("Bath"),  and John B. Goss ("Goss").  In 1978, MSI licensed the SEAKING technology to Branham Industries, Inc. ("BII").  As part of the agreement, BII was given access to technical information, manuals, service bulletins, computer software and SEAKING manufacturer drawings ("SEAKING drawings").  Also, as part of the licensing agreement, Morrow was employed at BII to engineer and supervise the SEAKING line.  The defendants Mark Bobeck ("Bobeck"), Edward Hudson, and Pat Hudson were also employed at BII.  Pat Hudson was in charge of SEAKING crane sales, Eddie Hudson was in charge of SEAKING crane production, and Bobeck was a project superintendent.  After the licensing agreement between MSI and BII had expired in 1990, Morrow, Bath and Goss filed suit against BII claiming unpaid royalties and  that BII had refused to return the SEAKING technology. During the BII litigation, Morrow, Bath, and Goss assigned their rights in the SEAKING crane technology to Affco, Inc., Seatrax's parent company.   Also, during the BII litigation, defendants Bobeck, Pat Hudson, and Edward Hudson left BII to form Sonbeck, an "aftermarket supplier" of replacement parts for offshore marine cranes, including the SEAKING brand.   At the conclusion of the  BII litigation, the court,

2

inter alia, enjoined BII and third parties from using the SEAKING technology without obtaining written consent from Morrow, Bath, and Goss. After the court issued its injunction, Morrow, now a Seatrax officer, and Pat Hudson searched BII premises for the SEAKING drawings, but did not uncover them.

In 1992, BII filed a bankruptcy liquidation proceeding and its assets were sold at a public auction. Sonbeck purchased a container of SEAKING crane parts at the auction. Between 1990 and 1992, Sonbeck entered into a sales agency agreement with Seatrax to assist Seatrax in selling SEAKING parts. Seatrax also purchased SEAKING parts from Sonbeck. However, the agreement was terminated in 1992. In 1993, Seatrax received a registered trademark from the United States Patent and Trademark Office for the SEAKING name. In 1996, Seatrax learned that Sonbeck without its consent had disseminated service manuals for SEAKING parts that bore the SEAKING mark registered to Seatrax.

In July 1996, Seatrax filed suit in federal district court in Texas alleging trademark infringement under the Lanham Act (15 U.S.C. §§ 1114-1118), unfair competition, and misappropriation of trade secrets under Texas law. Seatrax sought injunctive relief, compensatory and treble damages, and attorney's fees. Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before a federal magistrate judge for all purposes, including the entry of final judgment. During the discovery phase, Seatrax learned that Sonbeck was in possession of 288 SEAKING drawings. Both parties moved for summary judgment. The magistrate judge granted Sonbeck's motion for summary judgment on the state law claim of misappropriation of trade secrets but preserved the Lanham Act claim for the jury. The magistrate judge also denied Seatrax's motions for summary judgment. Prior to trial, the court excluded evidence of alleged oral misrepresentations

3

and testimony from Seatrax's expert witness. The court further precluded Seatrax from presenting its common-law unfair trade practice by misappropriation claim to the jury. The jury found in favor of Seatrax regarding its trademark infringement claim under the Lanham Act. The magistrate judge granted injunctive relief, but denied Seatrax's requests for accounting of profits and attorney's fees. Seatrax filed post-trial motions for a new trial and reconsideration of summary judgment which the magistrate judge denied.

<u>DISCUSSION</u>

Although the jury found in favor of Seatrax on its trademark infringement claim, Seatrax nonetheless appeals the magistrate judge's pretrial, evidentiary, and post-verdict rulings. First, Seatrax claims that the magistrate judge erroneously granted summary judgment in favor of Sonbeck on its state law claim of misappropriation of trade secrets. Seatrax also maintains that the magistrate judge improperly excluded its state law claim of unfair competition by misappropriation from the jury. Additionally, Seatrax attacks the magistrate judge's evidentiary rulings regarding the exclusion of evidence, witnesses, and testimony. Finally, Seatrax argues that the magistrate judge erroneously denied its request for accounting of profits and attorneys' fees. We address each of Seatrax's claims in turn.

I.

Summary Judgment

We review a grant of summary judgment <u>de novo</u>. <u>Exxon Corp v. Baton Rouge Oil</u>, 77 F. 850, 853 (5th Cir. 1996). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specifically facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 212, 249, 106 S.Ct. 2505, 2510-11, 91

L.Ed.2d 202 (1986); <u>Brothers v. Klevenhagen</u>, 28 F.3d 452, 455 (5th Cir. 1994), <u>cert. denied</u> 513 U.S.1045, 115 S.Ct. 638, 139 L.Ed.2d 545 (1994). We review "the facts drawing all inferences most favorable to the party opposing the motion." <u>Montagorda County v. Russell Law</u>, 19 F.3d 215, 217 (5th Cir. 1994). Therefore, the entry of summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>Rojax v. TK Communications, Inc.</u>, 87 F.3d 745, 747 (5th Cir. 1996).

The magistrate judge granted Sonbeck's motion for summary judgment on the state law claim of misappropriation of trade secrets based on Sonbeck's argument that Seatrax's claim was barred by the then applicable two-year statute of limitations under Texas law. <u>See</u> TEX.CIV.PRAC. & REM. § 16.003. The magistrate judge found that the alleged acts of misappropriation occurred between 1990 and 1992, which was approximately four years before Seatrax filed suit. However, during the summary judgment proceedings, Seatrax argued that because Sonbeck concealed its acts of misappropriation between 1990 and 1992, Seatrax was unable to discover that it had a possible cause of action until 1996 when it learned that Sonbeck was distributing manuals that bore the SEAKING trademark. Thus, Seatrax asserted that the discovery rule exception tolled the statute of limitations until 1996. Nevertheless, the magistrate judge held that the discovery rule exception was inapplicable because misappropriation of trade secrets is not inherently undiscoverable.[1] The magistrate judge also found that Seatrax failed to exercise due diligence to discover the alleged acts of misappropriation between 1990 and 1992.

---

[1] <u>See</u> <u>Computer Associates Intern v. Altai</u>, 918 S.W.2d 453, 457 (Tex. 1994) ("Because misappropriations of trade secrets is *not a cause of action that is inherently undiscoverable,* permitting application of the discovery rule exception in these cases would do no more than permit the litigation of stale claims.")

Approximately six months after the jury trial and the magistrate judge had entered final judgment, Seatrax filed a motion to reconsider the summary judgment ruling. Seatrax alleged that the magistrate judge applied the wrong statute of limitations. Before Seatrax filed its first motion for summary judgment on May 14, 1997, Texas enacted a three year statute of limitations for suits alleging misappropriation of trade secrets. Under TEX. CIV. PRAC. & REM. CODE § 16.010, "[a] person must bring suit for misappropriation of trade secrets not later that *three years* after the misappropriations is discovered or by the exercise of due diligence should have been discovered." (emphasis added). Furthermore, the revised statute of limitations expressly incorporates the discovery rule exception. The effective date of the revised statute was May 1, 1997, approximately two weeks before Seatrax filed its first motion for summary judgment. Because the revised statute of limitations expressly provides that it applies to actions pending "in which [a] trial . . . begins on or after [the] effective date," Seatrax argues that the magistrate judge applied the wrong statute of limitations. However, neither party nor the magistrate judge raised the revised statute of limitations during the summary judgment proceedings. Nevertheless, the magistrate judge treated Seatrax's motion to reconsider as a motion for relief from judgment under Fed. R. Civ. P 60(e) and held that Seatrax's claim would have been barred under the new statute of limitations because Seatrax failed to exercise due diligence to discover the acts of misappropriation between 1990 and 1992.

We begin our analysis by acknowledging that Seatrax's failure during the summary judgment phase to assert the revised statute of limitations in response to Sonbeck's motion for summary judgment and subsequently raising the issue for the first time in a post-verdict motion constitutes a waiver. Cf. FED. R.CIV.PROC. 8(c); Davis v. Huskipower Outdoor Equip. Corp., 936 F.2d 193, 198 (5th Cir.1991) (defendant waived statute-of-limitations defense by failing to raise it in pleadings);

6

Anderson v. Flexel, Inc., 47 F.3d 243 (7th Cir. 1995).[2]  However, even under the revised three-year statute of limitations, we nonetheless find that the claim is barred.

Generally, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of the injury is not discovered until later, and even if all resulting damages have not yet occurred. Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997).  A cause of action for a misappropriation of trade secrets accrues when the trade secret is actually used. See Altai, 918 S.W.2d at 455.  A trade secret is  any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it. See id. (citing Hyde Corp v. Huffines, 158 Tex. 566, 214 S.W. 2d 763, 776, (Tex.), cert. denied, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148 (1958)).  A misappropriation of trade secrets that continues over time is a single cause of action and the limitations period begins running without regard to whether the misappropriation is a single or continuing act. TEX.CIV.PRAC. & REM.CODE ANN. § 16.010(b).  Generally, "[a] party's ignorance of material facts or lack of knowledge will not prevent the statute of limitations from running. Snyder v. Eanes Independent School District, 860 S.W.2d 692, 699 (Tex. App.-- Austin 1993, writ denied).  However, the discovery rule exception, which is expressly incorporated in the revised three-year statute of limitations, defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action. See Altai, 918 S.W.2d at 455 (citing Trinity River Auth. v. URS Consultants, 889 S.W.2d 259, 262 (Tex. 1994)); see also TEX.CIV.PRAC. & REM.CODE ANN. §

_____

[2] Generally, a defendant is barred from raising the statute of limitations for the first time post-trial to avoid or defeat an obligation or claim.  In the instant case, the waiver doctrine would  prevent Seatrax from raising the correct statute of limitations post-trial in order to preserve its claim and defeat Sonbeck's motion for summary judgment which was based on the previous two-year statute of limitations.

16.010(b)("[a] person must bring suit for misappropriations of trade secrets not later than three years after the misappropriations is discovered *or by the exercise of due diligence should have been discovered*.")(emphasis added).

Although Seatrax contended in the pleadings below that the acts of misappropriation first took place between 1990 and 1991, Seatrax nonetheless claims that it did not become aware of the alleged misappropriation until it filed suit in 1996. However, a review of the summary judgment evidence reveals that several events occurred between 1990 and 1992 that should have put Seatrax on notice of possible misappropriation. Because "[w]e live in a world of high employee mobility and easy transportability of information, . . . it is not unexpected that a former employee will go to work for a competitor and that the competitor might thereby acquire trade secrets." Altai, 918 S.W.2d at 457. During the BII litigation in 1991, the defendants left BII to form Sonbeck. While at BII, the defendants had access to the SEAKING drawings. After the court in August 1991 issued a final judgment in favor of Morrow, Bass, and Goss, (Seatrax's predecessors-in-interest)and had enjoined BII and third parties from using or transferring the SEAKING technology without obtaining consent from the owners of the technology, Morrow, now a Seatrax officer, and Pat Hudson together searched BII premises for SEAKING technology, including the SEAKING drawings. They did not recover any of the drawings. Morrow also testified in his deposition that since 1991, after the defendants left BII to form Sonbeck, he had heard a "lot of innuendos and rumors" about Sonbeck's role in distributing SEAKING parts. In 1992, after the sales agency agreement between Seatrax and Sonbeck was terminated, at least three of Seatrax's customers raised questions to Seatrax regarding Sonbeck's status as a distributor of SEAKING parts. Later in 1992, Seatrax began purchasing replacement SEAKING parts from Sonbeck. As such, "[s]uspicion[] should [have] abound[ed]"

8

when the defendants left BII, formed Sonbeck, and shortly thereafter began marketing a product similar to that previously developed by BII and marketed by Seatrax. See Altai, 918 S.W.2d at 457 ("Suspicions should abound when a competitor markets a product similar to that previously developed by a former employer after one of the former employer's employees begins work for the competitor.")

Nonetheless, Seatrax argues that it could not have been aware of a possible cause of action between 1990 and 1992 because Sonbeck fraudulently concealed its acts of misappropriation. Under Texas law, fraudulent concealment is an equitable doctrine that tolls the statute of limitations. "Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the statute of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence." Bordelon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983). Mere concealment is insufficient to establish fraudulent concealment. See In the Matter of Placid Oil Co., 932 F.2d 394, 399 (5th Cir. 1991). Thus, there must have been a duty, on Sonbeck's part, to disclose its alleged acts of misappropriation. The party asserting the fraudulent concealment defense to the statute of limitations bears the burden of showing that the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the one to whom it belongs. See Timberlake v. A.H. Robins Co., Inc., 727 F.2d 1363, 1366 (5th Cir. 1984). To determine whether a duty to disclose exists, the court may consider: (1) whether the parties entered an expressed contractual agreement restricting disclosure of the information, see Daily International Sales Corp. v. Eastman Whipstock, Inc., 662 S.W.2d 60, 63 (Tex.App. Houston [1st Dist.] 1983, no writ.); (2) whether a duty of confidentiality is implied, as a matter of law, from the parties'

9

relationship, see Willis v. Maverick, 760 S.W.2d 642, (Tex. 1988); (3) the nature and extent of security precautions taken by the possessor of the trade secret to keep the information from the general public, and (4) the degree to which the information has been placed in the public domain by voluntary disclosure. See J.C. Kinley Co. v. Hayne Wire Line Service, Inc., 705 S.W.2d 193, 195 (Tex.App. Houston [1st Dist.] 1985).

First, regarding whether a contractual agreement existed, Seatrax concedes in its brief that a confidentiality, nonuse, or nondisclosure contractual agreement with Sonbeck did not exist. Second, the sale agency agreement between Sonbeck and Seatrax did not, as a matter of law, create a duty of confidentiality. Cf. J.C. Kinley Co., 705 S.W.2d at 198 (confidential relationship did not exist between licensor and licensee absent an express agreement of confidentiality).

Third, regarding adequate security measures, Morrow stated in his deposition that Seatrax had no formal written policy that restricted the use or the dissemination of the SEAKING drawings. Although the drawings contained a confidentiality clause in the title caption, Morrow stated that it was not normal practice to require that recipients of the drawings enter a nonuse, nondisclosure, or confidentiality agreement. Furthermore, Morrow admitted that he did not know all the people that BII may have distributed the drawings to, and thus, "they could be anywhere." Morrow further stated that after the BII litigation, he did not request the return of the drawings that BII had disseminated to subcontractors. Thus, we agree with the magistrate judges's observation that Seatrax has failed to demonstrate that it had "exercised the requisite diligence to protect [the drawings]." Although the summary judgment evidence does not reveal the extent, if at all , that Seatrax placed the SEAKING drawings in the public domain, nevertheless, other factors discussed above weigh against Seatrax's claim that Sonbeck fraudulently concealed the SEAKING drawings.

10

Finally, Seatrax maintains that the marketing and selling of SEAKING parts by Sonbeck between 1991 and 1992 did not put Seatrax on notice of a possible cause of action for misappropriation because it was legal for Sonbeck and other companies to sell and market SEAKING parts. Although the sale and marketing of SEAKING parts by Sonbeck when viewed alone may not have reasonably put Seatrax on notice of a cause of action, however, Seatrax's argument loses force when viewed in light of the totality of the summary judgment evidence. First, we reiterate that the defendants, which had access to the SEAKING drawings at BII, left BII, formed another company, and begun selling and marketing SEAKING parts similar to the SEAKING parts that were sold and marketed by BII and later by Seatrax. After the defendants formed Sonbeck, Morrow began hearing "innuendos and rumors" about Sonbeck's role as SEAKING parts distributor. As such, the defendant's actions between 1991 and 1992 created a red flag for possible misappropriation of trade secrets. Thus, the summary judgment evidence indicates that Seatrax failed to exercise reasonable diligence to discover its cause of action. Therefore, because Seatrax's claim of misappropriation accrued between 1991 and 1992, and that the equitable doctrine of fraudulent concealment is not applicable, we find that Seatrax's claim of misappropriation is barred by the two-year and the revised three-year statute of limitations.

## II.

### Unfair Competition By Misappropriation

Seatrax argues that the court erred when it modified the pretrial order by failing to instruct the jury on its unfair competition by misappropriation claim. Sonbeck maintains that the court correctly excluded the claim because Seatrax failed to properly plead the cause of action, and thus did not provide adequate notice. Sonbeck also questions whether common law unfair competition

11

by misappropriation exists under Texas law because the Texas Supreme Court has not ruled on the issue and the state appellate courts are split. The magistrate judge concluded that Seatrax failed to plead the claim properly and excluded the claim from the jury. The magistrate judge also questioned the viability of common law unfair trade competition by misappropriation claims under Texas law.

Under the federal rules, the complaint shall set forth a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. PROC. 8(a)(2). Furthermore, "[t]he Fifth Circuit has repeatedly held that it will review the modification of a pretrial order under the abuse of discretion standard. " Spiller v. Ella Smithers Geriatric Center, 919 F.2d 339, 343 (5th Cir.1990) (quoting Bradley v. United States, 866 F.2d 120, 124 (5th Cir.1989). Although it is in the power of the court to allow the introduction of a new issue or claim in the interest of justice, see Robinson v. Central Loan and Finance Corp, 609 F.2d 170, 174 (5th Cir. 1980)(citation omitted), a court does not abuse its discretion by excluding a new claim if adding the claim unduly prejudices or surprises the opposing party. See McConaty v. Dr.Pepper/Seven Up, Corp., 131 F.3d 558, 562 (5th Cir. 1998).

The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters. American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 14 (5th Cir. 1974). Misappropriation is a branch of the tort of unfair competition which involves the appropriation and use by the defendant, in competition with the plaintiff, of a unique pecuniary interest created by the plaintiff through the expenditure of labor, skill and money. See Conan's Properties v. Conan's Pizza, Inc., 752 F.2d 145, 156 (5th Cir. 1985). In the original complaint, Seatrax made a general allegation of unfair competition, but did not expressly allege that Sonbeck competed with it unfairly by misappropriating trade secrets. Furthermore, the original complaint did not allege misappropriation

12

of trade secrets. In the first amended complaint, Seatrax added the claim of misappropriation of trade secrets and provided factual allegations to support the claim. However, Seatrax did not amend its allegation of unfair competition, nor did Seatrax expressly allege unfair competition by misappropriation.[3] Seatrax expressly alleged the unfair competition by misappropriation claim for the first time in the pretrial order after the court had ruled that the misappropriation of trade secrets claim was barred by the statute of limitations. Because Seatrax's original and amended complaint failed to provide adequate notice of the unfair competition by misappropriation claim, the court did not abuse its discretion when it failed to instruct the jury on the claim.

However, Seatrax asserts that its general allegation of unfair competition gave Sonbeck adequate notice. Seatrax contends that it is unnecessary to spell out each legal theory to be relied upon or to separate each distinct legal theory into a separate count. See Patriarea v. Federal Bureau of Investigation, 639 F.Supp. 1193, 1198 (D.R.I. 1986)(citing O'Donnell v. Elgin, J & E.R. Co., 338 U.S. 384, 392 n.6, 70 S.Ct. 200, 205, n.6, 94 L.Ed.2d 187 (1949)). However, courts have identified several causes of actions that fall under the penumbra of unfair competition under Texas law. See United States Sporting Products v. Johnny Stewart Game Calls, Inc., 865 S.W.2d 214, 216 (Tex. App-Waco 1993, writ denied)("[w]ithin the broad scope of unfair competition are the independent causes of actions such as trade-secret law, 'palming off' or passing off, and misappropriation, to name only a few."); McCoy v. Mitsuboshi Cutlery, Inc., 67 F.3d 917, 925 n.2 (Fed Cir. 1995), cert. denied, 516 U.S. 1174 (1996)(unfair competition includes misappropriation of business opportunity). As such, Seatrax's general allegation of unfair competition without additional qualifying language to

---

[3] Seatrax conceded in its opposition to Sonbeck's motion to strike Seatrax's proposed jury instruction on unfair competition by misappropriation that its allegation of misappropriation of trade secrets was a discrete and separate claim from the common law unfair competition claim.

13

identify a specific cause of action under unfair competition did not provide adequate notice of its

claim.[4]   Therefore, the magistrate judge did not abuse her discretion when she modified the pretrial

order and declined to instruct the jury on the unfair competition claim.[5]

III.

Remedies

Seatrax claims that the court erroneously denied its request for attorneys' fees and an

accounting of Sonbeck's profits.  Before we examine the merits of Seatrax's claims, we find it helpful

to briefly outline the remedies available under the Lanham Act.  The Lanham Act in pertinent part

provides:

> (1) Any person who shall, without consent of the registrant–
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation or
> registered mark in connection with the sale, offering for sale, distribution, or
> advertising of any goods, services on or in connection with which such use is likely
> to cause confusion, or to cause mistake, or to deceive  . . . shall be liable in a civil
> action by the registrant for the remedies hereinafter provided . . .

15 U.S.C. § 1114(1)(a) ("§1114").  Remedies for § 1114 violations are provided under §§ 1116

(injunctive relief), 1117 (profits, damages, costs, attorneys' fees), and 1118 (destruction of infringing

articles).  Under § 1116, federal courts may "grant injunctions, according to the principles of equity

and upon such terms as the court may deem reasonable, to prevent the violation of any right of the

registrant of a mark registered in the Patent or Trademark office..."  An injunction alone, under

appropriate circumstances, fully satisfies the equities of a given case.  See Bandag, Inc v. Al Bolser's

---

[4]  Seatrax's isolated reference to its claim of unfair competition by misappropriation during a
deposition did not provide adequate notice of its intent to present the claim at trial.

[5] Because we find that Seatrax failed to properly plead its common law claim of unfair competition
by misappropriation, we need not reach whether the claim is recognized under Texas law.

14

Tire Stores, 750 F.2d 903, 919 (5th Cir. 1984)(discussing Champion Spark Plug Co. v. Sanders, 331

U.S. 125, 1130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386, (1947)).

Once infringement has been established under § 1114, the plaintiff is entitled, subject to the

principles of equity, to recover:

> (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of
> the action . . . If the court shall find that the amount of the recovery based on profits
> is either inadequate or excessive the court may in its discretion enter judgment for
> such sum as the court shall find to be just, according to the circumstances of the case.
> Such sum in either of the above circumstances shall constitute compensation and not
> a penalty. The court in exceptional circumstances may award reasonable attorney fees
> to the prevailing party.

U.S.C. § 1117(a).

The goal behind §§ 1116 and 1117 remedies is to achieve equity between or among the

parties. In fashioning the appropriate remedy, a legal determination of liability is not dispositive.

Because each case presents a different set of facts and circumstances, a case-by-case evaluation is

warranted to determine the nature of the infringing conduct and its adverse effects, if any, on the

plaintiff. A district court's ruling regarding §§ 1116 and 1117 remedies is subject to abuse of

discretion standard of review. See Pebble Beach Co v. Tour 18 I Ltd., 155 F.3d 554, 555 (5th Cir.

1998).

A.

Accounting of Profits

An award of the defendant's profits is not automatic. See Pebble Beach, 155 F.3d at 554 (5th

Cir. 1998). We have identified a non-exhaustive list of factors to determine when a plaintiff is entitled

to an accounting of the defendant's profits under § 1117(a):

15

(1) whether the defendant intended to confuse or deceive;
(2) whether sales have been diverted;
(3) the adequacy of other remedies;
(4) any unreasonable delay by the plaintiff in asserting her rights;
(5) the public interest in making the conduct unprofitable, and
(6) whether it is a case of palming off.

See, Rolex Watch USA v. Meece, 158 F.3d 816, 123 (5th Cir. 1998), Pebble Beach Co., 155 F.3d at 554; Texas Pig Stands, Inc v. Hard Rock Café Int'l, Inc., 951 F.2d 684, 695 (5th Cir.1992).  If the court determines that an accounting of profits is appropriate, the plaintiff is entitled to only those profits attributable to the unlawful use of its trademark.  See Pebble Beach Co., 155 F.3d at 554.

Seatrax attacks the court's denial of its request for an accounting of profits on several fronts.  First, Seatrax claims that the magistrate judge improperly excluded evidence of willfulness and intentional infringement that would have triggered § 1117 damages.[6]  Furthermore, Seatrax argues that the magistrate judge erroneously excluded expert testimony regarding diversion of sales and profits.  Finally, Seatrax argues that an accounting was warranted because Sonbeck was unjustly enriched from its infringing conduct.

### 1. Evidence of Willfulness

#### a. Theft of the SEAKING drawings

Seatrax argues that the magistrate judge erroneously excluded evidence of Sonbeck's alleged theft of the 288 SEAKING drawings.  Seatrax maintains that evidence of theft demonstrates Sonbeck's willfulness and intent to infringe on Seatrax's trademark.  However, Sonbeck argues that

---

[6] Although the jury found that Sonbeck infringed on Seatrax's trademark rights, the jury did not find that the infringement was willful.  Thus, Seatrax argues that the court erred by excluding evidence that would have impacted the jury's finding on this issue.

16

Seatrax failed to make an offer of proof to show that Sonbeck stole the drawings. Prior to trial, the court denied Sonbeck's motion in limine to exclude any reference or evidence of Sonbeck's possession of the drawings, but admonished Seatrax from making any reference as to how Sonbeck came into possession of the drawings.

"We begin by recognizing that the 'trial court's discretion to admit or exclude evidence is generally broad, but competent evidence cannot be excluded without a sound and acceptable reason.'" Davidson Oil Country Supply Co. v. Klockner, Inc., 908 F.2d 1238, 1245 (5th Cir.1990); see also Folks v. Kirby Forest Ind. Inc., 10 F.3d 1173, 1181 (5th Cir.1994). Courts of Appeals are to review a district court's evidentiary rulings "only for abuse of discretion." Johnson v. Ford Motor Co., 988 F.2d 573, 578 (5th Cir.1993). In order to vacate a judgment based on an error in an evidentiary ruling, "this court must find that the substantial rights of the parties were affected." Carter v. Massey-Ferguson, Inc., 716 F.2d 344, 349 (5th Cir.1983); FED.R.EVID. 103(a).

In the instant case, the record reveals that at the final pretrial conference, Seatrax responded to Sonbeck's motion in limine to exclude reference to the drawings by arguing that *possession* of the drawings was relevant to show damages. Specifically, Seatrax asserted that because Sonbeck *possessed* the drawings, and Sonbeck was the only other major vendor of SEAKING parts, *possession* of the drawings was relevant to demonstrate that Seatrax was entitled to profits derived from SEAKING parts sold by Sonbeck. At the beginning of trial, Seatrax again argued that it needed to introduce evidence that Sonbeck *possessed* the drawings. However, the record does not indicate that Seatrax made a proffer at trial regarding Sonbeck's alleged theft of the drawings. Seatrax did not proffer what evidence it sought to introduce to demonstrate theft, or the witnesses that it would call to establish its allegation of theft.

17

Generally speaking, "this circuit will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial." Stockstill v. Shell Oil Co., 3 F.3d 868, 872 (5th Cir. 1993); United States v. 873 Winkle, 587 F.2d 705, 710 (5th Cir.), cert. denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). While a formal proffer is not essential, the proponent of the evidence "must show in some fashion the substance of the proposed testimony." Id. In light of the fact that the magistrate judge permitted Seatrax to introduce evidence regarding Sonbeck's possession of the drawings, and Seatrax's failure to make a sufficient proffer regarding its allegation of theft, Seatrax does not show that the court's ruling was erroneous or amounted to an abuse of discretion.

### b. Alleged oral misrepresentations

Next, Seatrax maintains that the magistrate judge erroneously excluded testimony regarding alleged oral misrepresentations made by Sonbeck's representatives. Seatrax proffered the testimony of Dwight Nunley (Nunley) and James Schott (Schott). Nunley would have testified that in 1992, Bobeck falsely represented to him that Sonbeck was the successor-in-interest to the SEAKING manufacturer, that the SEAKING manufacturer was out of business, and that the previous head of SEAKING was under indictment. Schott would have testified that in 1997, Bobeck stated to him that "Seatrax and us, we're going to go ahead and take cranes sales . . . take the Gulf and international waters by storm." Seatrax argues that these statements were probative of Sonbeck's intent and willfulness to infringe.

Courts of Appeals are to review a district court's evidentiary rulings "only for abuse of discretion." See Ford Motor Co., 988 F.2d at 578. In order to vacate a judgment based on an error

18

in an evidentiary ruling, "this court must find that the substantial rights of the parties were affected." See Carter., 716 F.2d at 349.

The federal trademark statute that Seatrax sued under, 15 U.S.C. § 1114, provides a federal cause of action against infringement for a <u>registrant</u> that holds a <u>registered</u> trademark. The record reveals that Nunley's proffered testimony refers to events that took place prior to the registration of the SEAKING mark by Seatrax in 1993. Because Seatrax was not the registrant for the SEAKING mark, nor was the SEAKING mark registered when the alleged misrepresentations were made, Nunley's testimony is not probative of Sonbeck's intent or willfulness to infringe on Seatrax's trademark rights. Although the post-registration statement made to Schott by Bobeck in 1997 regarding Seatrax and Sonbeck "taking the Gulf by storm" intimates an association between Seatrax and Sonbeck and thus may have caused confusion, Seatrax does not show that the comment was willfully or intentionally made to cause such confusion. Furthermore, in light of Seatrax's failure to plead trademark infringement by oral misrepresentation, the comment's probative value diminishes.[7] Therefore, Seatrax does not show that the court abused its discretion by excluding the statements.

### c. Expert Witness Testimony

Next, Seatrax argues that the court improperly excluded expert testimony from Douglas Campbell (Campbell) regarding Sonbeck's gross profits from the sale of SEAKING replacement parts and diversion of sales. A review of the record reveals that Seatrax proffered Campbell's testimony to establish that Seatrax sustained profit-loss due to Sonbeck's infringing activity. Seatrax argues

---

[7] The court below observed that Nunley and Schott's statement were probative under a claim of trademark infringement by false representation pursuant to 15 U.S.C. § 1125(a). Because Seatrax did not claim infringement under § 1125(a), the court ruled that "no evidence of alleged 'oral misrepresentations' as an infringing act will be admitted at trial."

that Campbell's 15 years in the marine crane industry qualified him to give expert testimony regarding Sonbeck's profit margins for the sale of SEAKING parts.

We review for abuse of discretion the district court's decision to admit or exclude expert testimony. See Moore v. Ashland Chemical Inc., 151 F.3d 269, 274 (5th Cir.1998) (en banc) (citing General Electric Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). The landmark case Daubert v. Merrell Dow Pharmaceuticals, Inc. provides the analytical framework regarding the admissibility of expert and scientific testimony. See 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The district court's chief role when determining the admissibility of expert testimony under Daubert is that of a "gate-keeper." See Rushing v. Kansas Southern Railway Co., 185 F.3d 496, 506 (5th Cir. 1999). As such, the district court makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue." Daubert 509 U.S. at 592-93, 113 S.Ct. at 2796. Many factors may bear on this inquiry, for example whether a scientific technique has been subjected to peer review and whether it has received general acceptance. See id. at 593-94, 113 S.Ct. at 2796-97. This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999). But whether Daubert's suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. Kumho Tire, id., 119 S.Ct. at 1174-76 (1999). It is a fact-specific inquiry. See Black v. Food Lion, Inc., 171 F.3d 308, 311 (5th Cir.1999). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual

20

rigor that characterizes the practice of an expert in the relevant field." Kumho, 119 S.Ct. at 1176.

In the instant case, the record reveals that the court thoroughly reviewed Campbell's proffered testimony. In its ruling to exclude Campbell's testimony, the magistrate judge noted that Campbell did not have any formal or professional training in accounting. Furthermore, Campbell did not conduct any independent examination of Sonbeck's gross sales figures, which were provided by Seatrax's attorneys. In a complex case involving trademark infringement, Campbell's lack of formal training or education in accounting, and his failure to conduct an independent analysis of Sonbeck's sales figures were insurmountable obstacles for Seatrax in its attempt to qualify him as an expert. Under these circumstances, the court's ruling did not amount to an abuse of discretion.

### d. Unjust Enrichment

Finally, Seatrax argues that the court erred in denying its request for an accounting of Sonbeck's profits because Sonbeck was unjustly enriched. However, a review of the record reveals that evidence of unjust enrichment and diversion of sales is speculative at best.[8] Notwithstanding, other factors weigh against an accounting of profits. First, the jury did not find that Sonbeck's

---

[8] Seatrax introduced approximately ten instances where Sonbeck distributed materials bearing the SEAKING mark to potential customers. However, Seatrax's president testified that it experienced no decline in the sale of SEAKING replacement parts since 1991. Seatrax registered the SEAKING mark in 1993. As such, the link between Sonbeck's gross profits from the sale of SEAKING replacement parts and Seatrax's claim of unjust enrichment and diversion of sales is attenuated.

infringement was willful.[9] Furthermore, Seatrax does not show that the present case involves palming off.    Additionally, the magistrate judge's stern and unambiguous  permanent injunction which prohibits Sonbeck from using the SEAKING mark without express permission from Seatrax, provides an effective deterrent to future infringement.   Thus, in light of "the lack of sufficient proof of actual damages, and lack of an intent to confuse or deceive, injunctive relief satisfies the equities."  See Pebble Beach, 155 F.3d at 555.  Therefore, the court did not abuse its discretion when it denied Seatrax's request for  an accounting of Sonbeck's profits.

B.

Attorneys' fees

Under § 1117, the court may award attorneys fees in "exceptional cases."  "[T]he exceptional case is one in which the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful, and . . . it has been interpreted by courts to require a showing of a high degree of culpability." Rolex Watch, 158 F.3d at 824 (quoting Martins Herend Imports, Inc., v. Diamond & Gem Trading USA, Co, 112 f.3d 1296, 1305 (5th Cir. 1997)). Seatrax argues that the court erroneously denied its request for attorneys fees.  We review a district court's award of attorneys' fees for abuse of discretion, and its finding as to whether a case is exceptional for clear error.  Pebble Beach, 155 F.3d at 554, 555.

The sole ground Seatrax argues to demonstrate that the instant case is "exceptional" is that Sonbeck's infringement was "willful."  However, the jury found that Sonbeck's infringement was not

---

 [9] Although we have not expressly held that a finding of willfulness is required to trigger § 1117 damages, Seatrax does not cite, nor does our independent research reveals any cases from this circuit where an accounting of profits has been awarded without a finding of willfulness.

willful. Seatrax does not show that the jury's factual finding should be disturbed on review. Accordingly, the court did not abuse its discretion in denying Seatrax's claim for attorneys' fees.

CONCLUSION

For the reasons stated above, we AFFIRM the rulings and judgment of the court below. Accordingly, we also find that Seatrax's post-verdict motions are without merit. Costs of the appeal are awarded against Seatrax.

AFFIRMED