# United States Court of Appeals for the Federal Circuit

---

**RAYTHEON COMPANY,**
*Plaintiff-Appellant,*

v.

**INDIGO SYSTEMS CORPORATION**
AND **FLIR SYSTEMS, INC.,**
*Defendants-Cross Appellants.*

---

2011-1245, -1246

---

Appeal from the United States District Court for the Eastern District of Texas in No. 07-CV-0109, Judge Richard A. Schell.

---

Decided: August 1, 2012

---

CHRISTOPHER LANDAU, Kirkland & Ellis, LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was DANIEL A. BRESS. Of counsel on the brief were MARTIN E. ROSE, M. ROSS CUNNINGHAM, and STEVEN D. SANFELIPPO, Rose Walker, LLP, of Dallas, Texas.

MICHAEL J. COLLINS, Bickel & Brewer, of Dallas, Texas, argued for defendants-cross appellants. With him

on the brief were JAMES S. RENARD, WILLIAM A. BREWER, III and C. DUNHAM BILES.

————————————

Before LINN, DYK, and O'MALLEY, *Circuit Judges.*

LINN, *Circuit Judge.*

Raytheon Company ("Raytheon") appeals from a decision of the U.S. District Court for the Eastern District of Texas entering summary judgment and dismissing Raytheon's claims against Indigo Systems Corporation and FLIR Systems, Inc. ("FLIR") (collectively "Indigo") for trade secret misappropriation on the ground that they were time barred. *See Raytheon Co. v. Indigo Sys. Corp.*, 653 F. Supp. 2d 677 (E.D. Tex. 2009). Indigo cross appeals from the district court's decision denying its motion for attorney fees. *See Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109 (E.D. Tex. Sept. 17, 2010). Because the district court erred by resolving genuine issues of material fact and drawing inferences in favor of Indigo, this court reverses the district court's grant of summary judgment.[1]

————————————

[1] Because this decision nullifies Indigo's status as a prevailing party, this opinion will not address the substance of Indigo's cross appeal from the district court's denial of its motion for attorney fees. The district court's denial of attorney fees is therefore vacated. The court notes, however, that the district court denied Indigo's fees motion because it did not recite its intent to seek fees in the pleadings, relying on the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This court does not consider *Iqbal* and *Twombly* to support the district court's conclusion.

## I. BACKGROUND

Raytheon Image Systems, a unit of the defense contractor Raytheon, specializes in infrared imaging equipment. Indigo Systems Corporation is a wholly owned subsidiary of FLIR, also specializing in infrared imaging, and founded in 1996 by three former Raytheon employees including James Woolaway ("Woolaway"). In his resignation letter, Woolaway promised not to recruit Raytheon employees while still at Raytheon or during any consultancy that might develop between Raytheon and Indigo. Indigo soon thereafter began to provide consulting services to Raytheon in a relationship governed by a series of Confidential Disclosure Agreements.

In 1997, Raytheon became concerned that Indigo was recruiting Raytheon personnel to gain access to Raytheon trade secrets. Raytheon expressed this concern to Indigo, which responded that the concern was baseless and cited multiple Indigo policies aimed at protecting Raytheon's intellectual property. On July 30, 1997, Raytheon and Indigo reached an agreement whereby Indigo would not hire Raytheon personnel without permission for the remainder of 1997, and would notify Raytheon of any plans to hire Raytheon personnel through June 30, 1998. Indigo would also prohibit future employees from using any intellectual property obtained from former employers. In exchange, Raytheon released all claims against Indigo of which it was then aware. Raytheon enforced this agreement through separate agreements with its own employees. The relationship between Raytheon and Indigo terminated in 2000.

In 2000, Indigo won the Litening military contract to provide cooled infrared cameras to the military, over Raytheon and other competitors. Then, in March 2003, Indigo was selected over a number of competitors, including Raytheon, to receive a subcontract from Northrop

Grumman to provide infrared cameras for the F-35 Joint
Strike Fighter contract.

In March 2004, Raytheon acquired an Indigo infrared
camera "to see how one of its competitors was manufac-
turing a competing camera." *Raytheon*, 653 F. Supp. 2d
at 682. (citation omitted). In August of the same year,
Raytheon disassembled the camera and found what it
believed was evidence of patent infringement and trade
secret misappropriation. In February 2007, Raytheon
found a correlation between the areas of expertise of
former employees who had departed for Indigo and In-
digo's intervening technological achievements, which
Raytheon began to believe were the result of the misuse of
Raytheon's intellectual property.

On March 2, 2007, Raytheon sued Indigo in the U.S.
District Court for the Eastern District of Texas asserting
causes of action, among others, for patent infringement
and misappropriation of trade secrets under both Texas
and California law. Indigo asserted a statute of limita-
tions defense, which Raytheon countered by arguing that
the discovery rule (under which a cause of action does not
accrue until it is known or should be known to the plain-
tiff) and the doctrine of fraudulent concealment (which
Raytheon asserted as a separate cause of action) tolled
the statute.[2]

---

[2] Both California and Texas have statutes that pro-
vide for a three year statute of limitations for trade secret
misappropriation claims. *See* Cal. Civ. Code § 3426.6.
("An action for misappropriation must be brought within
three years after the misappropriation is discovered or by
the exercise of reasonable diligence should have been
discovered."); Tex. Civ. Prac. & Rem. Code § 16.010(a) ("A
person must bring suit for misappropriation of trade
secrets not later than three years after the misappropria-

The district court agreed that Raytheon's trade secret claim was time barred and granted summary judgment in favor of Indigo. In its analysis, the court first acknowledged that "Indigo's assurances reasonably convinced Raytheon that its fears of misappropriation were unfounded." *Raytheon*, 653 F. Supp. 2d at 685. But it went on to explain that the combined factors of the expiration of the parties' agreement regarding recruitment of Raytheon personnel in 1998, the end of the consulting arrangement in 2000, and Indigo's success as a competitor in 2000 and 2003 demonstrated that "Raytheon had developed an acute suspicion before March of 2004 that Indigo was infringing its intellectual property rights." *Id.* The district court questioned Raytheon's claim that it purchased the Indigo camera as part of "routine competitive analysis" based on the testimony of five witnesses who claimed to have been unaware of Raytheon having taken similar measures in the past. *Id.* The district court stated that "the most damaging factor for Raytheon" was "that it [could] point to no change in circumstances between 2000, when it ceased reposing trust in Indigo to perform consulting services, and March of 2004, when Raytheon had developed suspicions it deemed worth investigation . . . [and that] the blend of information that alerted Raytheon to the existence of its claim was available to, *and known by*, Raytheon long before it acted on that information." *Id.* at 686 (emphasis added). According to the district court, "had [Raytheon] timely investigated the facts available to it, it indeed would have drawn the conclusion that its intellectual property had been misappropriated." *Id.* Thus, the district court concluded that "[t]he evidence demonstrates as a matter of law that Raytheon knew or should have known all of *the facts* on which it base[d] its trade secret misappropriation claim before March of 2004." *Id.* at 689 (emphasis in original).

---

tion is discovered or by the exercise of reasonable diligence should have been discovered.").

The parties settled Raytheon's claims for patent infringement. The district court dismissed the case and entered a final judgment on January 7, 2011. Raytheon timely appealed and Indigo timely cross appealed. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This court reviews the district court's grant or denial of summary judgment under the law of the regional circuit." *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011). "Applying Fifth Circuit law, we review the district court's decision to grant summary judgment *de novo*, applying the same standard as the district court." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (citing *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011)). In its review, the Fifth Circuit "views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011).

### B. Arguments on Appeal

On appeal, Raytheon primarily argues that the district court erred by granting summary judgment that the statute of limitations barred its claim. Specifically, Raytheon argues that the district court erroneously concluded that Raytheon reasonably should have known about all the facts giving rise to its claim before March 2, 2004, based on the factual conclusion that Raytheon could no longer reasonably rely on Indigo's assurances in view of the termination of the parties' agreements and consul-

tancy and Indigo's subsequent competition with Raytheon. According to Raytheon, this conclusion improperly resolved a genuine factual dispute that needed to be presented to the jury. Raytheon also contends that the district court committed a similar error when it decided that Raytheon purchased the Indigo camera because of preexisting suspicions rather than because of routine competitive analysis, arguing that this is another factual dispute that also needed to be resolved by the jury. According to Raytheon, both of these conclusions disregard contrary evidence and resolve disputed issues of fact in favor of the moving party, Indigo, in violation of the summary judgment rule.

Indigo responds that the district court did not base its decision on the resolution of any disputed issue of fact. Indigo argues that, while it presented numerous witnesses rebutting Raytheon's contention that it purchased the Indigo camera through routine competitive analysis, Raytheon presented only two witnesses to support its claim—witnesses whose testimony was so vague that the district court correctly refused to consider it. According to Indigo, the district court based its decision on the following undisputed facts: Raytheon's knowledge of large scale employee movement to Indigo; Indigo's successful competition in the military infrared space; and Raytheon's ability to disassemble the camera and analyze its personnel records long before March 2004. Indigo argues that the discovery rule does not help Raytheon because it had a basis for suspicion as of 2000 and, from that time on, could have discovered, with minimal investigation, all the facts upon which it would later base its claim. Indigo argues that its own protestations of innocence did not excuse Raytheon's failure to investigate. Finally, Indigo argues that summary judgment was also proper because Raytheon failed to support the elements of its fraudulent concealment claim with any evidence.

Raytheon replies that Indigo relies primarily on cases in which there were no affirmative assurances, thereby falsely equating the extensive series of assurances in this case with mere denials of wrongdoing. Raytheon argues that neither Texas nor California law establishes a rule that parties are automatically on notice of possible trade secret claims whenever their employees move to their competitors. Raytheon further argues that Indigo concedes that the district court failed to consider evidence that Raytheon had conducted competitive analyses on previous occasions, and explains that the district court provided no reason for ignoring that evidence, notwithstanding Indigo's assertion that it was proper to ignore it because it was too vague.

## C. Analysis

### i.

As a threshold matter, the parties dispute whether California law or Texas law should apply to the trade secret misappropriation claims in this case. Indigo contends that Texas law should apply, while Raytheon argues for the application of California law. For the purposes of this appeal, we need not decide this question because we conclude, as did the district court, that there is no meaningful difference between California and Texas law with respect to the tolling of the statute of limitations. *See Raytheon*, 653 F. Supp. 2d at 683-84 (relying on both California and Texas law). California and Texas have both adopted a "discovery rule" such that claims for trade secret misappropriation accrue for statute-of-limitations purposes when the plaintiff knew or reasonably should have known of the facts that give rise to the claim. Tex. Civ. Prac. & Rem. Code Ann. § 16.010(a); Cal. Civ. Code § 3426.6. In both Texas and California, whether or not a plaintiff "should have known" under the discovery rule is ordinarily a question of fact. *See, e.g.*,

*Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998) ("Inquiries involving the discovery rule usually entail questions for the trier of fact."); *Pirtle v. Kahn*, 177 S.W.3d 567, 572 (Tex. App. 2005) ("When a plaintiff discovers or should have discovered the cause of his injury and whether a particular plaintiff exercised due diligence in so discovering are questions of fact."); *Ovando v. County of Los Angeles*, 159 Cal. App. 4th 42, 61 (Cal. Ct. App. 2008) ("The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (Cal. 1988)).

The same is true when the statute of limitations is tolled by fraud. *See, e.g.*, *Stonecipher's Estate v. Butts' Estate*, 591 S.W.2d 806, 809 (Tex. 1979) ("Our courts have consistently held that fraud vitiates whatever it touches . . . and that limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence. Reasonable diligence is a question of fact." (citations omitted)); *Mills v. Mills*, 305 P.2d 61, 70 (Cal. Dist. Ct. App. 1956) ("When a party is guilty of fraudulent concealment of the cause of action the statute is deemed not to become operative until the aggrieved party discovers the cause of action. . . . When the facts are susceptible to opposing inferences, whether a party had notice of circumstances sufficient to put a prudent man on inquiry as to a particular fact, and whether by prosecuting such inquiry he might have learned such fact, are questions of fact to be determined by the trial court." (citations omitted)).

While the discovery rule is focused on the reasonableness of the plaintiff's failure to discover a cause of action and fraudulent concealment is focused on the actions of

the defendant to prevent the plaintiff from discovering the cause of action, the two issues turn on the same questions of fact in the present case. The district court acknowledged this when it explained that the distinction between fraudulent concealment and the discovery rule would make no difference here because "[t]he circumstances that render the doctrine of fraudulent concealment unavailing ensure the same fate for Raytheon's discovery rule argument." *Raytheon*, 653 F. Supp. 2d at 688.

The only way Indigo alleges—and the district court found—that Raytheon could have *known* of the alleged misappropriation is by taking apart Indigo's camera. So, for Raytheon's claim to be time barred, the facts must establish as a matter of law that Raytheon could have and *should have* acquired and disassembled the camera before March 2, 2004, *because* by that time it already had a reason to believe the camera contained evidence that its trade secrets had been misappropriated. The threshold problem with the district court's conclusion is that it fails to recognize this basic point: the disassembly and inspection of the Indigo camera is the only alleged path to Raytheon's knowledge of the facts giving rise to Raytheon's cause of action. To reach the conclusion it did, the district court needed to find (at least implicitly) that Raytheon, as a matter of law, should have acquired and disassembled the Indigo camera before March 2004. But there is no way the district court could reach such a conclusion without resolving factual questions against Raytheon, the non-moving party, at summary judgment.

Raytheon denies that it bought the camera due to any suspicion at all. And Raytheon supported its claim with testimony relating to its past practice of examining competitive products, which the district court ignored. Moreover, the fact that Raytheon waited from March, 2004, when it acquired the camera, until August of the same year before taking it apart, supports Raytheon's conten-

tion that it did not actually suspect anything before it dissected the camera. Thus, the facts of record could support a *reasonable* inference in Raytheon's favor, which the district court improperly declined to draw. Instead, the district court focused only on the witnesses who denied being aware of previous instances of reverse engineering for competitive-analysis reasons. *Id.* ("[A]t least five [Raytheon witnesses] . . . testified that they had never heard of Raytheon taking such steps."). Thus, the district court drew impermissible factual inferences *against the non-moving party* to a summary judgment motion. *See Griffin*, 661 F.3d at 221; *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) ("A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations." (citations omitted)); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n.2 (Tex. 1988) ("[O]n motion for summary judgment, the burden is on the defendant to negate the discovery rule by proving as a matter of law that no issue of material fact exists concerning when the plaintiff discovered or should have discovered [its cause of action]. . . . Thus, in a summary judgment setting, the burden rests upon the movant defendant not only to plead limitations, but also to negate the discovery rule." (citation omitted)). To the extent that the district court's decision depends on the conclusion that Raytheon bought the Indigo camera due to a preexisting suspicion, it cannot be sustained.

ii.

We must next determine whether the district court erred in concluding that Raytheon *should* have suspected Indigo at an earlier time. The district court asserted that all the relevant facts (aside from those discovered inside the camera itself)—i.e. the employee mobility, the confidentiality agreements, the expiration of the consultancy, and the 2000 and 2003 Indigo victories in the marketplace—were already known to Raytheon before March 2004. As the district court explained, there was "no change in circumstances between 2000, when it ceased reposing trust in Indigo to perform consulting services, and March of 2004, when Raytheon had developed suspicions it deemed worth investigation." *Raytheon*, 653 F. Supp. 2d at 686. But this reasoning is premised on the district court's factual conclusion that Raytheon's discovery of its cause of action was not based entirely on happenstance rather than any preexisting suspicion. Thus, the district court's conclusion that, because nothing had changed in the intervening time, Raytheon's delayed discovery was unreasonable, fails for the same reason as the district court's factual conclusion that Raytheon discovered the injury through its own *pre-existing* suspicion: it rests on the resolution of the same genuine issue of material fact against the non-moving party at summary judgment.

Furthermore, while Indigo relies on *Seatrax, Inc. v. Sonbeck International, Inc.*, 200 F.3d 358 (5th Cir. 2000), to support its argument that Raytheon should have suspected something sooner than it did, this reliance is misplaced. The district court accepted that initially "Indigo's assurances reasonably convinced Raytheon that its fears of misappropriation were unfounded." *Raytheon*, 653 F. Supp. 2d at 685. In *Seatrax* there were neither assurances nor a finding of reasonable reliance thereon. *See* 200 F.3d at 363-67. Here, the district court held that

the conceded reasonableness of relying on these assurances expired in 2000 along with the consultancy itself. Thus, the district court essentially concluded that from 2000 on, Raytheon was on permanent inquiry notice and therefore had a constant duty to investigate all acts of competition by Indigo for evidence of misappropriation. The district court presumed that because Raytheon *once* suspected Indigo, therefore, as a matter of law, it *should* have continued to suspect Indigo after 2000. But, this presumption ignores Indigo's assurances and was impermissible under both Texas and California law, because, as discussed above, whether or not the discovery rule applies is ordinarily a question of fact in both states.

It was for the jury and not for the district court to determine when Raytheon should have first discovered the facts supporting its cause of action. The district court erred by resolving genuine factual disputes in favor of Indigo, the moving party, when it concluded that Raytheon should have discovered its cause of action before March 2, 2004.

## III. CONCLUSION

For the foregoing reasons, the grant of summary judgment is reversed and the order denying Indigo's motion for fees is vacated. The case is remanded for further proceedings consistent with this opinion.

**REVERSED IN PART, VACATED IN PART, AND REMANDED**