A06A1650. POREX CORPORATION v. HALDOPOULOS et al.
(644 SE2d 349)

ADAMS, Judge.
Porex Corporation appeals from the trial court's grant of partial summary judgment in favor of Kleanthis Dean Haldopoulos, Benjamin T. Hirokawa and MicroPore Plastics, Inc. on the basis of the

five-year statute of limitation in the Georgia Trade Secrets Act. For the reasons set forth below, we reverse.

"To prevail on summary judgment, the movant must demonstrate that no genuine issue of material fact exists and that the undisputed facts, when viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *Sturdivant v. Moore*, 282 Ga. App. 863, 865 (640 SE2d 367) (2006). And "[a] defendant moving for summary judgment based on an affirmative defense may not rely upon an absence of evidence in the record disproving the affirmative defense." *Ward v. Bergen*, 277 Ga. App. 256, 260 (626 SE2d 224) (2006). Accordingly, MicroPore, Haldopoulos and Hirokawa bear the burden of coming forth with evidence establishing that Porex's claims are barred by the applicable statute of limitation.

Viewed in that light, the evidence shows that Porex is in the business of manufacturing porous plastic products in Georgia. The company asserts that the specific methods and equipment developed by Porex to produce plastic products are trade secrets. Haldopoulos began working for Porex in 1992 after graduating from college and stayed for seven years, working first as a product development engineer and later as a director of domestic sales. When he began his employment with Porex, Haldopoulos signed a "Key Employee Agreement" limiting his ability to compete with Porex and his use of the company's confidential information. Porex terminated Haldopoulos's employment in October 1999. Afterward, his attorney re-negotiated revisions to the employee agreement to omit the noncompetition and nonsolicitation provisions. But under the terms of a "Severance Agreement and General Release" Haldopoulos signed, the key agreement's prohibitions against disseminating or utilizing Porex's trade secrets and other confidential information remained in effect.

In November 1999, Haldopoulos began working to establish his own plastics manufacturing business, which he later incorporated as MicroPore Plastics, Inc. Haldopoulos started out of a facility in Longmont, Colorado owned by Safari Water Filtration Systems, Inc., a former Porex client. Hirokawa left his job at Porex in January 2000 and went to work for MicroPore.

Porex learned of Haldopoulos's activities at the Safari facility in the spring of 2000. Both Safari and Haldopoulos had contractual obligations not to misuse or disclose confidential information from Porex's operations. So on April 20, 2000, Porex's lawyers sent Haldopoulos's attorney a letter reminding him of this obligation, and stating, in pertinent part:

Porex also has strong reason to believe that Mr. Haldopoulos has misappropriated and is continuing to misappropriate

Porex's trade secrets and confidential information in the course of manufacturing a product for Safari that Porex previously manufactured for Safari during the time that he was employed with Porex.

Please be advised that Porex is prepared to take all steps necessary to enforce its contractual rights and its rights under other applicable law, to protect its confidential information and trade secrets.

The letter to Haldopoulos's attorney stated, however, that before taking legal action Porex wanted to speak to Haldopoulos "about the nature of his business activities."

Haldopoulos's attorney replied to the letter stating that Haldopoulos had "taken great pains to avoid using any confidential information or trade secrets of Porex" in connection with his new business, but reiterating that Haldopoulos had the right to compete with Porex and to solicit its customers. He declined, however, to disclose the details about the nature of Haldopoulos's business activities.

Porex's attorney responded by saying that the attorney's letter had not provided the assurances the company needed:

Based on Porex's considerable experience in the industry, it is inconceivable that, in a matter of months, Mr. Haldopoulos could have established a competing enterprise housed in the facility of a customer of Porex with projected revenues of $1M simply by using his general industry knowledge, examining some expired patents, gathering information from the public domain and obtaining specifications from customers. Because Haldopoulos refused to provide the information that Porex sought, the company suggested that a neutral third party observe his operations to determine whether he had misappropriated any of Porex's confidential information, while preserving the confidentiality of Haldopoulos's own operations. The letter concluded that "Mr. Haldopoulos will be making a serious error in judgment if he construes this proposal as a lack of resolve on the part of Porex." Haldopoulos did not respond to Porex's proposal.

At the same time, Porex also sent a letter to Safari raising concerns about whether Safari was sharing Porex's confidential information with Haldopoulos in the course of his work at its Colorado facilities. Porex was concerned that Haldopoulos was misusing

the company's confidential information and trade secrets to manufacture for Safari a product that Porex had previously supplied to that company. Safari responded by letter stating (1) that Porex was mistaken in its premise that Safari had entered into any business transactions or had any involvement with Haldopoulos's business; (2) that it had not shared any information with Haldopoulos about its methods for making water filters, the only product it manufactured; (3) that it had allowed Haldopoulos to use a small portion of its Colorado facilities "for his own individual purposes"; and (4) that it was terminating its permission for Haldopoulos to use those facilities. Victor L. Marrero, Porex's chief financial officer, stated that Safari's letter provided the assurances that Porex was seeking, and the company took no further action to pursue its suspicions because it believed that the situation had been resolved.

After leaving the Colorado location, MicroPore moved its operations to Stone Mountain and continued the manufacture of plastic products in direct competition with Porex. MicroPore asserts that it did not misappropriate Porex's trade secrets in building its business. Rather, Haldopoulos created his own manufacturing process based upon his general technical knowledge and experience in the industry, publicly available information and information received from third party vendors.

Michael Sutsko, who worked for Porex from April 1999 until October 2000, as a business unit director in the marketing department, had responsibility for monitoring competing businesses. He states that Porex was aware that MicroPore had been founded by two former Porex employees and continued the manufacture of porous plastic products, but the company made the decision not to put MicroPore on its list of key competitors because it was considered "inconsequential." Nevertheless, Sutsko asserts that Porex continued to "monitor" MicroPore's activities (presumably until Sutsko left the company in October 2000). Porex concedes that it was aware that MicroPore remained in the business of manufacturing plastics, but denies that it had any information that MicroPore was using its trade secrets at that time.

MicroPore's business grew over time, and according to Haldopoulos, "[a]lthough Porex was and remains the dominant player in the porous plastic marketplace, MicroPore has become Porex's largest and most significant competitor in this market." In January 2005, Porex approached Haldopoulos about the possibility of acquiring MicroPore. The parties continued negotiations over the next several months, and in August 2005, Marrero and two other Porex employees toured MicroPore's manufacturing facilities in Tucker. Marrero stated that Porex pulled back from the acquisition discussions when it discovered during that tour "that the manufacturing processes it was

considering buying actually consisted of Porex's own trade secrets." Porex asserts that this was the first notice the company had that MicroPore had actually misappropriated trade secrets. Porex states that prior to its August 2005 tour of the Tucker facility, it had no knowledge of the specific manufacturing processes that MicroPore was using to make porous plastic products. The company states that it was not possible to determine MicroPore's manufacturing processes through other means, such as reverse engineering on MicroPore's products. Porex subsequently initiated this lawsuit on September 14, 2005.

In granting the defendants' motion for summary judgment,[1] the trial court found that Porex had failed to exercise reasonable diligence to determine whether it had a claim after first becoming suspicious in the spring of 2000 that Haldopoulous may have misappropriated some of the company's trade secrets. The trial court stated that "[a]ny fact that excites [a plaintiff's] suspicion is the same as actual knowledge of his entire claim," paraphrasing *Pilkington Bros. v. Guardian Indus. Corp.*, 1986 U. S. Dist. LEXIS 24466, *6 (E.D. Mich. 1986). The trial court found that the information reflected in Porex's correspondence with Haldopoulos and Safari in April and May 2000 was sufficient to start the running of the five-year limitation period under the Georgia Trade Secrets Act. OCGA § 10-1-766. Thus, the court concluded that Porex's misappropriation claims filed in September 2005 were time-barred. Porex raises a number of enumerations of error, which arise out of its basic contention that the trial court erred in relying on the *Pilkington Bros.* suspicion standard.

Under OCGA § 10-1-766, "[a]n action for misappropriation must be brought within five years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." No Georgia cases have specifically addressed this provision of the Georgia Trade Secrets Act, which is Georgia's version of the limitation provision found in the Uniform Trade Secrets Act. But Georgia adopted a five-year limitation period instead of the three-year limit found in that act. Uniform Laws Annotated (West 2005), Uniform Trade Secrets Act, § 6. In choosing this language, the drafters of the uniform act adopted a discovery rule for triggering the running of the limitation period. "Without question, trade secret misappropriation is ordinarily covert and hard for the betrayed party

---

[1] The trial court granted summary judgment as to Counts 1, 2 (both misappropriation of trade secret claims), 4 (punitive damages) and part of Count 5 (attorney fees) of Porex's complaint. The trial court specifically found that Porex's claim for breach of contract was not affected by its ruling and deferred ruling upon Porex's claim for attorney fees arising out of the contract claim.

to discover." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App.4th 1018, 1026 (98 Cal. Rptr.2d 661) (2000). The discovery rule presumably is an attempt to balance that reality with the need to protect defendants from the endless potential for lawsuits. Thus, the drafters of the uniform act concluded that "[i]f objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights." Uniform Trade Secrets Act, § 6, Comment (2005). The Georgia legislature apparently determined that five years was a more appropriate time period for protecting those rights.

In interpreting the language of the uniform statute, courts have concluded that the statute begins to run when the plaintiff has "knowledge of sufficient facts from which a reasonable jury could infer misappropriation." *Chasteen v. UNISIA JECS Corp.*, 216 F3d 1212, 1218 (10th Cir. 2000); *Gal-Or v. The Boeing Co.*, 2006 U. S. Dist. LEXIS 24946 (D. Kan. 2006), rev'd on other grounds, 2006 U. S. Dist. LEXIS 32299 (D. Kan. 2006). Thus, the statute of limitation does not begin to run until a plaintiff has sufficient information to make a "meaningfully colorable" claim. *Intermedics, Inc. v. Ventritex, Inc.*, 775 FSupp. 1258, 1266 (N.D. Cal. 1991). Accordingly, mere suspicion of possible misappropriation does not amount to objectively reasonable notice sufficient to trigger the running of the statute. As one court noted:

> We cannot apply statute of limitations law in a way that pressures litigants to file suits based merely on suspicions and fears. At least in the commercial setting at issue here, suspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11.

Id. See also *Massachusetts Eye and Ear Infirmary v. QLT Photothera-peutics*, 412 F3d 215, 239 (1st Cir. 2005) ("Suspicion and knowledge are poles apart on a continuum of understanding. . . .") (citation and punctuation omitted); *Sokol Crystal Products v. DSC Communications Corp.*, 15 F3d 1427, 1430 (7th Cir. 1994) (concerns and suspicions rather than knowledge of misuse "do not start the clock of the statute of limitations"); *B. Braun Med. v. Rogers*, 163 Fed. Appx. 500, 504, 2006 U. S. Dist. LEXIS 884 (9th Cir. 2006) ("Under California law, 'a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period.' [Cit.]") (emphasis in original). Even though the *Pilkington Bros.* decision suggests that suspicion equates with knowledge, the court in that case did not rely on mere suspicion in finding that the plaintiff's trade secret claims were barred. Rather, the court found that the plaintiff had

"actual knowledge" that its trade secrets had been disclosed and within one year should have known from objective facts that the defendant had knowledge of those secrets and intended to use them. Nevertheless, the plaintiffs did not file their claim until 13 years later. *Pilkington Bros. v. Guardian Indus. Corp.*, 1986 U. S. Dist. LEXIS 24466 at *12. Thus, we agree with Porex that the trial court erred to the extent that it held that suspicion alone was sufficient to trigger the limitation period.

On the other hand, courts have rejected the argument that the statute does not begin to run until a plaintiff can clearly establish a winning claim of misappropriation:

> A rule . . . under which a statute of limitations only begins running when a plaintiff can unassailably establish a legal claim for trade secret misappropriation, would effectively eviscerate the statute of limitations in all cases in which the plaintiff never discovers "smoking gun" evidence of misappropriation, but instead must rely on circumstantial and inferential evidence to prove misappropriation.

*Chasteen v. UNISIA JECS Corp.*, 216 F3d at 1218. See also *Epstein v. C. R. Bard, Inc.*, 460 F3d 183, 188 (1st Cir. 2006) ("knowledge of 'every fact necessary to prevail on the claim' is not required to put the plaintiff on inquiry notice and trigger the accrual period"); *Intermedics, Inc. v. Ventritex, Inc.*, 822 FSupp. 634, 641 (N.D. Cal. 1993) (that limitation period does not run until plaintiff has a winning claim "simply is not the law").

As an interim step between the two extremes of suspicion and full knowledge, the discovery rule mandates that a plaintiff must exercise reasonable diligence to discover any misappropriation of trade secrets. Thus, while suspicion alone is insufficient to trigger the limitation period, "when there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation. [Cit.]" *Alamar Biosciences v. Difco Laboratories*, 1995 U. S. Dist. LEXIS 21342, at *9 (E.D. Cal. 1995). "If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation. [Cit.]" *Read & Lundy, Inc. v. Washington Trust Co. of Westerly*, 2002 R.I. Super. LEXIS 181, at *29 (R.I. Super. 2002), aff'd, 840 A2d 1099, 1103 (R.I. 2004). See also *Adcor Indus. v. Bevcorp, LLC*, 411 FSupp.2d 778, 786 (N.D. Ohio 2005). "On the other hand, if certain facts necessary to the claim are unavailable

even to a reasonably diligent plaintiff, the limitations period is tolled until the facts do become available." *Alamar Biosciences v. Difco Laboratories*, 1995 U. S. Dist. LEXIS 21342 at *10.

Here, the trial court found that the strong suspicions referenced in Porex's letters in the spring of 2000 should have triggered further investigation into Haldopoulos's operations at some point prior to September 14, 2000, five years before it filed its claim. The April 20, 2000 letter reiterated Haldopoulos's contractual obligations to maintain the confidentiality of Porex's trade secrets. Porex stated that it was aware that Haldopoulos was manufacturing plastic products on Safari's premises, and professed a "strong reason to believe" that he was using Porex's trade secrets to make products for Safari that Porex had previously supplied. The letter did not, however, identify any particular confidential information that it believed Haldopoulos was using. Porex ended the letter by requesting information about the nature of Haldopoulos's operations. The letter to Safari similarly expressed concern that the company was supplying Porex's confidential information to Haldopoulos. After Haldopoulos responded to Porex's letter, the company indicated that its concerns were not allayed and expressed disbelief that Haldopoulos could have established his business with only his general knowledge, public information and specifications supplied by customers. These letters, along with the other information in the record, reflect that the only objective information Porex possessed in April and May 2000 was the knowledge that within a few months of leaving the company's employ, Haldopoulos was manufacturing plastics out of a facility owned by one of its former customers and had hired another former Porex employee to assist him. This information caused Porex to suspect that Haldopoulos was using its trade secrets to supply products to Safari.

In considering comparable correspondence, one court found where letters raised the mere possibility that the defendant may use misappropriated information in the future, the statute of limitation did not run. *Callaway Golf Co. v. Dunlop Slazenger Group Americas*, 318 FSupp.2d 222, 225 (D. Del. 2004). Similarly, correspondence that shows little more than the plaintiff's knowledge of a business relationship and a mere potential for trade secret misappropriation was found to be insufficient to start the limitation period. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics*, 412 F3d at 240 (letter made no precise accusations nor gave any indication that plaintiff was aware of particular instances of misappropriation). In contrast, where a plaintiff's correspondence identified specific technology that he believed was being used without his permission, and detailed a timeline of events leading to the alleged misappropriation, the statute of limitation was triggered. The correspondence was based upon a sales brochure plaintiff received that detailed the

defendant's alleged use of plaintiff's technology. *Phillips v. AWH Corp.*, 363 F3d 1207, 1215 (Fed. Cir. 2004).[2] In addition, one court found that the limitation period began where a letter indicated that the plaintiff knew that the defendant was continuing to supply his product to customers, even though the plaintiff was no longer supplying defendant with the product. *Epstein v. C. R. Bard, Inc.*, 460 F3d at 187-188.

We find that the information reflected in Porex's letters was insufficient as a matter of law to trigger the statute of limitation. "[M]ere knowledge that a company is competing in the marketplace and manufacturing similar parts is not dispositive on the accrual of the statute of limitations in a trade secret misappropriation case." (Punctuation omitted.) *Adcor Indus. v. Bevcorp, LLC*, 411 FSupp. at 791. But we find that an issue of fact exists as to whether the suspicions reflected in that letter were sufficient to cause a reasonably prudent person to investigate whether its trade secrets had been misappropriated. See *Engineering Resources v. CRS Steam*, 1996 U. S. Dist. LEXIS 1817, *20 (N.D. Ill. 1996). Compare *Seatrax, Inc. v. Sonbeck Intl.*, 200 F3d 358 (5th Cir. 2000) (limitation ran where plaintiff was unable to recover allegedly proprietary drawings from defendants, customers' questions indicated that defendant continued to distribute parts for plaintiff's product after sales agency agreement was terminated, and plaintiff purchased parts from defendant).[3]

Additionally, we find that the trial court erred in finding as a matter of law that reasonable diligence would have revealed information of an arguably colorable claim during the five-month period between April and September 2000. Certainly nothing in the current record indicates that further investigation in 2000 would have revealed the information that Porex discovered on its tour of the MicroPore facility in August 2005, upon which it now bases its claim. There is no evidence in the record that MicroPore or Haldopoulos ever supplied plastic products to Safari; in fact, the only indication in the

---

[2] This opinion was vacated to allow for en banc hearing on the issues. *Phillips v. AWH Corp.*, 376 F3d 1382 (Fed. Cir. 2004). But the en banc court specifically affirmed the portion of the earlier opinion holding that the misappropriation claims were time-barred. *Phillips v. AWH Corp.*, 415 F3d 1303, 1328 (Fed. Cir. 2005).

[3] The *Seatrax* opinion quotes an earlier Texas state court decision that "[s]uspicions should abound when a competitor markets a product similar to that previously developed by a former employer after one of the former employer's employees begins work for the competitor." 200 F3d at 366, quoting *Computer Assoc. Intl. v. Altai, Inc.*, 918 SW2d 453, 457 (Tex. 1996). But that opinion was addressing a general Texas statute of limitation, and that court's discussion was to support its finding that injuries from trade secrets are not "inherently undiscoverable." The court thus determined that the discovery rule did not apply to misappropriation claims under the general statute of limitation. *Computer Assoc. Intl. v. Altai, Inc.*, 918 SW2d at 457. We do not believe that by quoting this language, *Seatrax* stands for the proposition that suspicions, without objective facts, are sufficient to trigger the accrual period under the uniform act.

record is that no business relationship existed between those parties. At some point after May 2, 2000, Safari may have revoked its permission for Haldopoulos to work out of its Colorado facility. Haldopoulos stated, however, that MicroPore moved its facility from Colorado to Georgia in June 2000 when its cash flow could support an independent facility. Nothing in the record demonstrates how long it took MicroPore to install equipment and begin manufacturing plastic at its Stone Mountain facility. Although Haldopoulos states that MicroPore accomplished the move without any interruption in its business, the record is silent as to whether the business included commitments to produce products before September 14, 2000 and thus whether MicroPore was manufacturing products before that date. And while Haldopoulos states that MicroPore's basic manufacturing process and type of business have remained unchanged since 2000, these generalized statements are insufficient to carry the defendants' burden on summary judgment. There is nothing to indicate that MicroPore was employing equipment and specific processes that Porex claims are proprietary to its business during that five-month window.

The discovery rule charges a plaintiff with knowledge of facts that a reasonable investigation would have revealed, even if the plaintiff did not make such an investigation. It would be inappropriate, however, to grant summary judgment on the basis of the statute of limitation, where the record is silent as to what facts such an investigation would have shown.[4]

Accordingly, we reverse the trial court's order granting partial summary judgment.

*Judgment reversed. Blackburn, P. J., and Mikell, J., concur.*

---

DECIDED MARCH 27, 2007 — 

*Alston & Bird, Martin J. Elgison, John E. Stephenson, Jr.,* for appellant.

---

[4] In reaching this conclusion, we are mindful of the defendants' argument that they should not be required to "litigate against [themselves]" by introducing evidence of alleged misappropriations outside the limitation period. See *Intermedics, Inc. v. Ventritex, Inc.,* 822 FSupp. at 641. But the defendants need not admit any misappropriations to support their statute of limitation defense. They need only demonstrate, for example, that prior to September 14, 2000, MicroPore was actively employing one or more of the contested equipment or processes in manufacturing plastics, and that a prudent person could have discovered that fact upon reasonable investigation. See id. at 636 ("when the statute of limitations began to run on claims for misappropriation of some of the alleged trade secrets it simultaneously began running as to claims for alleged misappropriations of the other, related secrets, even if no acts of misappropriation of the other secrets had yet occurred").

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Edward B. Krugman, Ronan P. Doherty, Cohen, Pollock, Merlin & Small, David S. Givelber,* for appellees.

*Fisher & Phillips, Walter J. Kruger, D. Albert Brannen, Arnall, Golden & Gregory, Charles L. Gregory, William H. Kitchens,* amici curiae.