[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12611

_____

D.C. Docket No. 1:07-cv-00741-RWS

MASSEY, INC., et al.,

Plaintiffs,

FUSION FOODS OF TENNESSEE, INC., et al.,

Plaintiffs-Counter Defendants-
Third Party Plaintiffs,

ROUNDING THIRD, LLC,
TAYLOR INVESTMENT PARTNERS II, LLC,
d.b.a. TIP II Suburban, LLC,
d.b.a. TIP II Ansley, LLC,
DAVID TITSHAW,

Plaintiffs-Appellants,

3M RESTAURANTS, LLC,

Plaintiff,

THE JIMMY LEGS GROUP, LLC,

Plaintiff-Counter Defendant-Third Party Plaintiff,

STEVEN EGAN-FOWLER, et al.,

Plaintiffs-Third Party Defendants-Third Party Plaintiffs-
Counter Defendants,

versus

MOE'S SOUTHWEST GRILL, LLC,
RAVING BRAND HOLDINGS, INC.,
RAVINGS BRANDS, INC.,
H. MARTIN SPROCK, III,

Defendants-Counter Claimants-Third Party Plaintiffs-
Third Party Defendants-Appellees,

CORPORATE JOHN DOES X, Y, Z,
INDIVIDUAL JOHN DOES A, B AND C,

Defendants-Third Party Defendants,

MOE'S SOUTHWEST HOLDING, LLC,

Defendant-Appellee,

ROD ROELL,

Third Party Defendant-Third Party Plaintiff.

2

---

Appeal from the United States District Court for
the Northern District of Georgia

---

(May 9, 2014)

Before HULL, Circuit Judge, and GOLDBERG,[*] Judge, and SMITH,[**] District Judge.

PER CURIAM:

Thirty-nine plaintiff-franchisees,[1] including the three appellants (David Titshaw, Rounding Third, LLC, and Taylor Investment Partners II, LLC),[2] filed suit against their franchisor (Moe's Southwest Grill, LLC) and its three alleged alter egos (Raving Brands Holdings, Inc.; Raving Brands Inc.; and Moe's

---

[*] Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

[**] Honorable C. Lynwood Smith, Jr., United States District Judge for the Northern District of Alabama, sitting by designation.

[1] On March 30, 2007, twenty-eight (28) plaintiffs filed the initial complaint in this case. Thereafter, plaintiff Titshaw filed a similar complaint. The original case was consolidated with Titshaw's case, and other plaintiffs joined the action. Ultimately, thirty-nine (39) plaintiffs (including the appellants) filed a second amended complaint (the "complaint").

[2] Appellant-plaintiffs 3M Restaurants, LLC and Jimmy Legs Group, LLC dismissed their appeal.

3

Southwest Holdings, LLC) [hereinafter "Moe's"].  The plaintiff-franchisees,
including the three appellants, also sued Moe's CEO Martin Sprock.[3]

The original plaintiff-franchisees brought federal statutory claims under the
Robinson-Patman Act, 15 U.S.C. § 12 et seq., as well as Georgia state law claims
to recover allegedly illegal, undisclosed "kickbacks" provided by Moe's suppliers
to defendant Sprock.[4]  The only claims involved in this interlocutory appeal,
however, are the three appellant-plaintiff-franchisees' Georgia law claims against
defendant Moe's for (1) fraud in the inducement and fraudulent omission,
(2) negligent misrepresentation and negligent omission, and (3) Georgia civil
RICO violations.  One appellant-plaintiff, Titshaw, separately asserted a claim
against the defendants for intentional infliction of emotional distress ("IIED").[5]

The district court granted the defendants' motion for summary judgment on
all four claims brought by the three appellant-plaintiff-franchisees in this appeal.
The district court's ruling on the fraud, misrepresentation, and RICO claims was

---

[3]At all times relevant to this appeal, defendant Martin Sprock was the CEO of Moe's.

[4]The district court granted the defendants' motion for judgment on the pleadings on the original plaintiff-franchisees' Robinson-Patman Act claim.  However, the district court exercised its discretion to retain supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. 1367(a); Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Bayshore Ford Trucks Sales, Inc.), 471 F.3d 1233, 1241 n.16 (11th Cir. 2006).

[5]Titshaw also brought an unsuccessful claim for tortious interference, which is not relevant for purposes of this appeal.

4

based on a contractual limitation period for lawsuits in the three appellant-plaintiff-franchisees' Franchise Agreements.  The district court denied summary judgment as to the claims of certain other plaintiffs; thus, the case in the district court is ongoing as to those plaintiffs.

After granting summary judgment on the claims brought by the three appellant-plaintiff-franchisees in this appeal, the district court certified this interlocutory appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

After review of the record and the briefs of the parties, and having the benefit of oral argument, we reverse the district court's grant of summary judgment on the three appellant-plaintiff-franchisees' Georgia law claims listed above and affirm the district court's grant of summary judgment on appellant-plaintiff Titshaw's IIED claim.

## I.  FACTUAL BACKGROUND[6]

### A.    One-year Contractual Limitations Period

Each appellant-plaintiff-franchisee purchased a Moe's franchise in 2002 or 2003.  To become a franchisee, each appellant executed a Franchise Agreement with defendant Moe's that contained a one-year limitations period for bringing suit based on claims arising out of the Franchise Agreement.

That contractual limitation provision stated, "Any and all claims and actions arising out of or relating to this Agreement . . . shall be commenced <u>within one (1) year from the discovery of the facts giving rise to any such claim</u> or action, or such claim or action shall be barred . . . ."  (Emphasis added).  Thus, the one-year contractual limitation period did not begin to run until each appellant-plaintiff-franchisee discovered "facts giving rise to" his claims.

The Franchise Agreement states that it is governed by Georgia law.

### B.    Uniform Franchise Offering Circulars

The defendants contend that certain Uniform Franchise Offering Circulars ("UFOCs") gave the appellant-plaintiff-franchisees notice of the claims here.[7]  So,

---

[6]Because defendant Moe's moved for summary judgment, we present the facts in the light most favorable to the plaintiff-appellant-franchisees, construing all reasonable inferences in their favor.  We note that the plaintiff-appellant-franchisees may not be able to prove such reasonable inferences to the satisfaction of the jury, and, thus, the facts we recite may ultimately turn out not to reflect the true facts of the case.

6

we review the relevant facts related to those UFOCs.  And, for the remainder of this opinion, we refer to the three appellant-plaintiff-franchisees as the appellant-franchisees.

From 2002 to 2003, the appellant-franchisees received UFOCs prior to entering into their respective Franchise Agreements with Moe's.  Moe's provided those UFOCs to the then-prospective franchisees to meet Federal Trade Commission requirements.

Relevant to this appeal, the lengthy 2002 and 2003 UFOCs each contained a provision obligating the prospective franchisees to purchase certain products from Moe's-approved suppliers if they elected to enter into a franchise agreement.  Those UFOCs also stated, "[The] suppliers are not affiliated with us [i.e., Moe's].  Neither we nor any of our affiliates will derive any income from these purchases."  (Emphasis added).

---

[7]UFOCs are given to prospective franchisees.  They contain information like risk factors for entering into a franchise agreement; information about Moe's history, predecessors, affiliates, business experience, litigation, bankruptcy filings, and earnings; franchise fees; initial investment costs; restrictions on sources for products and services; obligations of the franchisee and franchisor; financing options; trademark and copyright information; restrictions on what the franchisee can sell; information about renewing, terminating, or transferring the franchise; and dispute resolution information.

As noted above, the three appellant-franchisees purchased their franchises during the period from 2002 to 2003. The appellant-franchisees here were not seeking to purchase new Moe's franchises in 2005. However, in April 2005, Moe's still sent its 2005 Uniform Franchise Offering Circular to them. As with the 2002 to 2003 UFOCs, the 56-page 2005 UFOC contained a provision obligating prospective franchisees to purchase certain products from Moe's-approved suppliers. But, this time, the UFOC disclosed that one of its suppliers was "indirectly related" to Moe's through defendant Sprock (who was then Moe's CEO) and that defendant Sprock had an ownership interest in that supplier and other suppliers.

Importantly, the 2005 UFOC omitted the statement from the 2002 and 2003 UFOCs that Moe's "affiliates" would not derive income from the sale of the suppliers' products and services. Instead, the 2005 UFOC stated only that "We [i.e., Moe's] do not derive revenue, directly or indirectly, from any of these suppliers in connection with the services or products they provide to our franchisees."

## II. CONTRACTUAL LIMITATIONS PERIOD

The first issue on appeal is whether the district court improperly found that the appellant-franchisees' claims were barred by the one-year contractual

8

limitations period in the Franchise Agreements.[8]  If the appellant-franchisees discovered the facts of Moe's alleged "kickback" scheme by August 16, 2006, their claims are barred by the contractual limitations period.  Otherwise, their claims are not time-barred.

The Franchise Agreements gave the appellant-franchisees one-year "from the discovery of the facts giving rise to [a] claim" to bring suit.  After viewing the summary judgment evidence in the appellant-franchisees' favor, we conclude that there is a question of material fact as to when they discovered the facts of the alleged "kickback" scheme.

The parties agree that the appellant-franchisees received the 2005 UFOC in April 2005; however, the parties dispute whether the appellant-franchisees read the relevant portions of that document.  The parties also dispute whether any similarly-situated franchisee (i.e., a then-current Moe's franchisee who was not seeking to purchase a new Moe's franchise) would reasonably read such a lengthy, detailed document in 2005 when the UFOC was offering other franchises for sale that those franchisees were not interested in buying and never bought in 2005.

---

[8]This Court reviews de novo a district court's grant of summary judgment.  Ave. CLO Fund Ltd. v. Bank of Am., NA, 709 F.3d 1072, 1077 (11th Cir. 2013).  This Court also reviews de novo the interpretation of a contract.  Id.

Nevertheless, even if the appellant-franchisees should have read (or did read) the 2005 UFOC, the parties vigorously dispute whether that document alone provided facts sufficient to trigger the running of the Franchise Agreement's contractual limitations period. In particular, that contractual limitations period required "discovery of the facts giving rise to [a] claim."

Here, the appellant-franchisees asserted Georgia law claims against Moe's for (1) fraud in the inducement and fraudulent omission, (2) negligent misrepresentation and negligent omission, and (3) Georgia civil RICO violations. Before filing a complaint with these claims in the district court, the appellant-franchisees would need to have discovered facts sufficient to allege the elements of scienter, negligence, and engagement in an unlawful enterprise to state the various causes of action.

The fact that a few sentences in the 2002 and 2003 UFOCs were altered slightly in the 2005 UFOC does not necessarily mean that Moe's knew that the statements in its 2002 and 2003 UFOCs were fraudulent or false when Moe's issued those documents; nor does it necessarily mean that Moe's negligently issued the earlier UFOCs. That is, even if the 2005 UFOC informed the appellant-franchisees that defendant CEO Sprock, as an owner, was indirectly receiving payments from the Moe's-approved suppliers, the jury could find that the

10

revelation of that "kickback" in 2005 did not simultaneously reveal that Moe's had the requisite scienter (or was negligent or was engaged in an unlawful enterprise) when it released the 2002 and 2003 UFOCs.

Because Moe's scienter, possible negligence, and membership in an unlawful enterprise were facts that the appellant-franchisees needed to "discover" before the contractual limitations period began to run, the disputed and material question of when the appellant-franchisees discovered those facts was a question appropriately left for the jury. Notably, too, the evidence fails to show that any of the hundreds of franchisees who received the 2005 UFOC complained about the financial relationship between Moe's CEO and Moe's-approved suppliers.

Thus, construing the facts in the appellant-franchisees' favor, a jury could conclude that the 2005 UFOC did not provide notice sufficient to constitute "discovery of the facts" of the appellant-franchisees' RICO, fraud, and misrepresentation claims. See Nash v. Ohio Nat'l Life Ins. Co., 597 S.E.2d 512, 515 (Ga. Ct. App. 2004) ("When . . . the underlying cause of action is one alleging actual fraud, the statute of limitation is tolled until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence." (internal quotation marks omitted)); accord Porex Corp. v. Haldopoulos, 644 S.E.2d 349, 353 (Ga. Ct. App. 2007) (noting that the statute of limitation in a

11

misappropriation claim "does not begin to run until a plaintiff has sufficient information to make a 'meaningfully colorable' claim"); id. ("[M]ere suspicion of possible misappropriation does not amount to objectively reasonable notice sufficient to trigger the running of the statute.").

Stated another way, given the nature of the particular claims at issue here, we cannot say that reading this 2005 UFOC alone—and the subtle modifications therein—constitutes, as a matter of law, discovery of facts giving rise to those particular claims at issue here.

## III.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The second issue on appeal is whether the district court improperly granted summary judgment on appellant-plaintiff Titshaw's IIED claim.

Plaintiff Titshaw alleged that defendants Moe's and CEO Sprock intentionally attempted to "tarnish Mr. Titshaw's business reputation and to drive him from" the Moe's franchise, resulting in "emotional distress as [Titshaw] sought to protect and preserve his business interest and provide for his family."

To support his IIED claim, plaintiff Titshaw attached internal emails to his brief opposing Moe's summary judgment motion.  Because Titshaw did not produce these emails during discovery, the district court did not consider them. See Fed. R. Civ. P. 37(c)(1) (disallowing use of undisclosed Rule 26(a) or (e)

information  unless the failure to disclose that information was "substantially justified" or "harmless").  To date, Titshaw has offered no reason for not producing the internal emails in discovery.  Without some explanation, we cannot conclude that the district court abused its discretion in not considering the emails.[9]

Nevertheless, even if we consider these emails, plaintiff Titshaw's evidence shows only that (1) Moe's and Titshaw disagreed on the direction and management of the company and (2) as a result of this disagreement, Moe's tried to get Titshaw to sell his franchises and leave his position on the franchisee advisory committee. A Georgia law IIED claim requires showing "(1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress."  Renton v. Watson, 739 S.E.2d 19, 26 (Ga. Ct. App. 2013).  Moe's alleged conduct is insufficient to meet the second element—that is, the alleged conduct is not extreme or outrageous as a matter of law.  See Frank v. Fleet Fin., Inc., 518 S.E.2d 717, 720 (Ga. Ct. App. 1999) ("The defendant's conduct must be so extreme in degree, as to

---

[9]This Court reviews a district court's evidentiary rulings at the summary judgment stage for an abuse of discretion.  Wright v. Farouk Sys., Inc., 701 F.3d 907, 910 (11th Cir. 2012).  This abuse-of-discretion standard applies to the district court's conclusions that (1) disclosure was required under Rule 26 and (2) a party's failure to meet Rule 26's requirements was not substantially justified or harmless.  See Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1221–22 (11th Cir. 2010).

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (quotation marks omitted)).

Other than some "raised voices," there is no evidence that defendant Moe's or CEO Sprock carried out a personal vendetta, made targeted or personal threats, or aggressively harassed Titshaw.  At best, the evidence reveals a business decision to try to close ranks and get Titshaw to walk away from the business relationship. See Jarrard v. United Postal Serv., Inc., 529 S.E.2d 144, 147 (Ga. Ct. App. 2000) ("Sharp or sloppy business practices, even if in breach of contract, are not generally considered as going beyond all reasonable bounds of decency as to be utterly intolerable in a civilized community." (quotation marks omitted)).

The district court did not err in granting summary judgment in defendants Moe's and Sprock's favor on appellant-plaintiff Titshaw's IIED claim.

## IV.  CONCLUSION

Because the defendants were not entitled to summary judgment on the three appellant-franchisees' (1) fraud in the inducement and fraudulent omission, (2) negligent misrepresentation and negligent omission, and (3) Georgia civil

14

RICO claims, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.[10]

Because the defendants were entitled to summary judgment on plaintiff Titshaw's IIED claim, we affirm the grant of summary judgment on that claim.

**AFFIRMED IN PART AND REVERSED IN PART**.

---

[10]This opinion is limited to those appellant-franchisees who brought this interlocutory appeal and to those claims at issue in this appeal.

15