**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 25, 2014**

# In the Court of Appeals of Georgia

A14A0818.  SANCHEZ  v.  ATLANTA  UNION  MISSION
  CORPORATION.

BARNES, Presiding Judge.

Wilfredo Sanchez filed this negligence action against Atlanta Union Mission Corporation (the "Atlanta Mission") after he was injured while carrying out a work assignment as part of a substance abuse rehabilitation program. Atlanta Mission moved for summary judgment on the ground that a contractual exculpatory clause allegedly agreed to by Sanchez when he enrolled in the rehabilitation program waived and released it from liability for its own negligence. The trial court granted Atlanta Mission's motion for summary judgment based on the exculpatory clause, resulting in this appeal. For the reasons discussed below, we conclude that Atlanta Mission failed to prove the terms of the exculpatory clause and thus failed to prove that Sanchez waived and released it from liability. Accordingly, we reverse.

To prevail on summary judgment, the movant must demonstrate that no genuine issue of material fact exists and that the undisputed

facts, when viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. And a defendant moving for summary judgment based on an affirmative defense may not rely upon an absence of evidence in the record disproving the affirmative defense.

(Citations and punctuation omitted.) *Porex Corp. v. Haldopoulos*, 284 Ga. App. 510, 511 (644 SE2d 349) (2007). See OCGA § 9-11-56 (c). Consequently, the burden was on Atlanta Mission to come forward with evidence establishing that Sanchez's negligence claim was barred by a contractual exculpatory clause waiving and releasing it from liability. See *Porex Corp.*, 284 Ga. App. at 511. See also OCGA § 9-11-8 (c) (release is an affirmative defense); *Stockbridge Dental Group, P.C. v. Freeman*, 316 Ga. App. 274, 275 (728 SE2d 871) (2012) (referring to defenses based on exculpatory clause as affirmative defenses).

Construed in the light most favorable to Sanchez as the non-movant, the record reflects that from April 2010 through early August 2010, Sanchez was a resident at the Atlanta Mission and participated in its substance abuse rehabilitation program. As part of his participation in the program, Sanchez was required to take classes and perform work assignments on a daily basis.

On June 8, 2010, Sanchez was assigned to disassemble and move steel-framed hospital beds from the main floor into the basement at the Carpenter House, a

building owned by the Atlanta Mission. According to Sanchez, the basement where his work crew was required to move the beds was dark and flooded with water. Sanchez testified that he was not given a light or any safety equipment while working in the basement and was never provided any instructions regarding how to safely move the beds, which were old and very heavy. While performing his work assignment, Sanchez was struck by a headboard from a hospital bed, causing him to sustain head and neck injuries and to require hospitalization for several days. Sanchez ultimately left the rehabilitation program because he was unable to attend classes or perform his work assignments as a result of continued severe pain.

Sanchez subsequently brought this negligence action seeking damages for his injuries from Atlanta Mission. Following discovery, Atlanta Mission moved for summary judgment, contending that before Sanchez was admitted into its rehabilitation program, he was required to sign a form entitled "My Commitment to the Personal Development Program" (the "Personal Development Agreement"). Although the two copies of the Personal Development Agreement introduced into the record were blurry and difficult to read, Atlanta Mission claimed that the third and ninth paragraphs of the agreement contained an exculpatory clause waiving and

3

releasing it from any liability for its own negligence. According to Atlanta Mission, the third paragraph of the Personal Development Agreement provided:

> I understand that I am fully responsible for my health care and for any accidents or injuries that occur while in residence. I assume full responsibility for exercising proper personal hygiene, obtaining qualified care if needed, following prescribed treatment guidelines, obtaining prescribed medications, and payment for services rendered.

The Atlanta Mission further claimed that the ninth paragraph of the Personal Development Agreement provided:

> I assume all responsibility and risk that may be involved in my stay at [Atlanta Mission]'s ministry centers. I do release and relinquish all claims whatsoever that may arise out of and/or in connection with my stay at [Atlanta Mission] for myself, my heirs, executors, administrators, or any other personal representative.

Atlanta Mission argued that the third and ninth paragraphs of the Personal Development Agreement barred Sanchez's negligence claim as a matter of law and thus entitled it to summary judgment.

In support of its motion for summary judgment, Atlanta Mission also submitted an unsigned form that it argued in its brief was an "exemplar" of the Personal Development Agreement signed by Sanchez. The unsigned form was attached to the

4

affidavit of Atlanta Mission's Chief Financial Officer, Gregory Copeland (the "Copeland Affidavit"). The third and ninth paragraphs of the unsigned form contained the same language that Atlanta Mission claimed was included in the third and ninth paragraphs of the Personal Development Agreement signed by Sanchez. To the extent that the pertinent paragraphs of the Personal Development Agreement signed by Sanchez were too blurry to read, Atlanta Mission contended that the unsigned form attached to the Copeland Affidavit was admissible as an exemplar to establish the contents of the signed Personal Development Agreement.

Opposing summary judgment, Sanchez contended that the copies of the Personal Development Agreement signed by him that had been submitted by Atlanta Mission in support of its motion were not entitled to evidentiary consideration because the pertinent paragraphs were "totally and completely illegible." He further contended that the alleged exemplar attached to the Copeland Affidavit was inadmissible to establish the terms of any contract between him and Atlanta Mission. Additionally, Sanchez argued that to the extent there was admissible evidence showing the terms of an exculpatory clause agreed to by him, the clause was unenforceable because it was vague and ambiguous.

Following a hearing, the trial court granted summary judgment in favor of Atlanta Mission on the ground that Sanchez's negligence claim was barred by the exculpatory clause contained in the ninth paragraph of the Personal Development Agreement signed by him.[1] The trial court found that the Personal Development Agreement was "clearly legible as it appears on the record." The trial court further found that the unsigned form attached to the Copeland Affidavit was admissible as an exemplar of the contract entered between Sanchez and Atlanta Mission. The trial court then went on to conclude that the ninth paragraph of the Personal Development Agreement was clear and unambiguous, did not violate public policy, and was enforceable against Sanchez as a matter of law, entitling the Atlanta Mission to summary judgment.

On appeal from the grant of summary judgment to Atlanta Mission, Sanchez contends that the trial court erred in considering the copies of the Personal Development Agreement contained in the record to find that he had agreed to an exculpatory clause relieving Atlanta Mission of liability. We agree.

---

[1] The trial court did not address the exculpatory clause allegedly contained in the third paragraph of the Personal Development Agreement.

Atlanta Mission, "as the party alleging that a contract exists, [had] the burden of proving its existence and its terms." (Citation and punctuation omitted.) *Swanstrom v. Wells Fargo Bank*, 325 Ga. App. 743, 744 (2) (754 SE2d 786) (2014). The record reflects that in support of its claim that Sanchez had agreed to an exculpatory clause in the Personal Development Agreement waiving and releasing it from liability, Atlanta Mission submitted a copy of the Personal Development Agreement in which the paragraphs relevant to its claim were blurry and impossible to read in their entirety. Because the relevant paragraphs were illegible, the Personal Development Agreement "[was] not entitled to evidentiary consideration." Id., quoting *Black v. Floyd*, 280 Ga. 525, 526 (1) (630 SE2d 382) (2006). See *Kelley v. General Motors Acceptance Corp.*, 145 Ga. App. 739 (1) (244 SE2d 911) (1978); *United Ins. Co. of America v. Hadden*, 126 Ga. App. 362, 364 (2) (190 SE2d 638) (1972). The pertinent paragraphs of the copy of the Personal Development Agreement included as an exhibit to Sanchez's deposition likewise were too blurry to be read in their entirety and could be afforded no evidentiary consideration. See id. Consequently, Atlanta Mission could not rely upon the copies of the Personal Development Agreement

7

included in the record to prove the terms of the alleged exculpatory clause, and the trial court erred to the extent it concluded otherwise.[2] See id.

Atlanta Mission argues, however, that the unsigned form attached to the Copeland Affidavit was an exemplar of the contract it required all of its program participants to sign and thus was admissible to prove the terms of the exculpatory clause contained in the Personal Development Agreement signed by Sanchez. We are unpersuaded in light of the record before us.

Under the best evidence rule,[3] "[t]o prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required." OCGA § 24-10-1002.[4] But "[t]he original shall not be required and other evidence of

---

[2] Neither party contends that the copies of the Personal Development Agreement in the appellate record are more illegible or differ in any respect from the copies reviewed by the trial court. By order entered on June 26, 2014, we requested that the trial court clerk supplement the appellate record if a clearer copy of the Personal Development Agreement signed by Sanchez existed in the trial court record. The clerk responded that no clearer copies were available.

[3] Because Atlanta Mission filed its motion for summary judgment in June 2013, Georgia's new evidence code applies. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

[4] A duplicate copy is admissible to the same extent as the original in many circumstances. See OCGA § 24-10-1003.

8

the contents of a writing, recording, or photograph shall be admissible if[] . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." OCGA § 24-10-1004 (1).[5]

Arguably, if an original writing has become degraded or damaged to the point that its material provisions are no longer legible, the original is "lost" or "destroyed" for purposes of OCGA § 24-10-1004 (1). Cf. *Hartz v. Sobel*, 136 Ga. 565, 582 (71 SE 995) (1911) (noting that "[i]f a deed or any other written instrument should, by reason of age or accidental tearing or obliteration, be in such condition that certain words were illegible or entirely missing from it," parol evidence may be introduced to prove the meaning of the illegible or missing words). And we see no reason why a document properly identified by an affiant as an "exemplar," or "a standard specimen,"[6] could not serve as "other evidence" to prove the contents of a lost or destroyed original writing. See *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83, 91-93 (2d Cir. 2002) (existence and terms of lost insurance policy could

---

[5] OCGA § 24-10-1004 lists additional conditions under which "other evidence" can be used to prove the contents of an original. See OCGA § 24-1004 (2) - (4). None of these additional conditions appear to be at issue here.

[6] An "exemplar" is an "ideal or typical example; a standard specimen." Black's Law Dictionary 593 (7th ed. 1999).

be proven by secondary evidence, including standard or "typical" policies); *Franklin Mtg. Capital Corp. v. Sunrise Security Mtg.*, No. G028753, 2003 Cal. App. Unpub. LEXIS 117, at *14 (Cal. Ct. App. Jan. 7, 2003) ("Franklin was indeed permitted to prove the content of the agreement through secondary evidence, including oral testimony, and evidence of its standard form exemplars and routine practice."). See also *United States v. Ross*, 33 F.3d 1507, 1513 (11th Cir. 1994) ("Once the terms of [Federal Rule of Evidence] 1004 are satisfied, the party seeking to prove the contents of the recording . . . may do so by any kind of secondary evidence.").[7]

The problem in the present case, however, is that the Copeland Affidavit is insufficient to establish a basis for the admission of the alleged exemplar as "other evidence" under OCGA § 24-10-1004 (1). In his affidavit, Copeland never states that a more legible copy of the Personal Development Agreement signed by Sanchez ever existed, and he never accounts for the poor quality of the copies of the Personal Development Agreement that do appear in the record or otherwise explain why a more legible copy could not be produced. Indeed, Copeland never mentions the

---

[7] "Given the similarity between Georgia's new evidence code and the Federal Rules of Evidence, it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts." (Citation and punctuation omitted.) *Williams v. State*, __ Ga. App. __, __ (1), n. 14 (Case No. A14A0986; decided Aug. 26, 2014).

10

Personal Development Agreement signed by Sanchez and never links it to the alleged exemplar in any respect. Furthermore, the top of the Personal Development Agreement is titled "My Commitment to the Personal Development Program" and refers to the "Atlanta Union Mission"[8] while the top of the alleged exemplar is titled "Program Commitment" and refers to the "Atlanta Mission," and thus the two documents clearly contain discrepancies. But Copeland fails to offer any explanation regarding the discrepancies in the forms, the timing of the changes in the forms, or whether those changes were material to this case. Because of these deficiencies in the Copeland Affidavit, the alleged exemplar was not admissible to prove the contents of the Personal Development Agreement signed by Sanchez. See *Philips-Van Heusen Corp. v. Mitsui O. S. K. Lines Ltd.*, No. 1:CV-00-0665, 2002 U.S. Dist. LEXIS 27057, at * 48 (M.D. Penn. Aug. 14, 2002) (exemplar of contract excluded where party seeking to introduce it failed to explain why the original contract could not be produced in its entirety and failed to explain discrepancies between the documents). See also *In re Oakley*, 397 B. R. 36, 47 (Bankr. S.D. Ohio 2008), aff'd, 431 B. R. 307

---

[8] The top of the Personal Development Agreement is in a larger font size than the body of the document and is legible.

11

(B.A.P. 6th Cir. 2009) ("For secondary evidence to be admissible . . . , the proponent of the evidence must first establish loss or destruction of the original contract.").

Given that the material provisions of the Personal Development Agreement contained in the record are illegible, and given that the Copeland Affidavit was insufficient to establish a basis for the admission of the alleged exemplar, the Atlanta Mission failed to show that the Personal Development Agreement signed by Sanchez contained an exculpatory clause waiving and releasing it from liability for its own negligence. Hence, we must conclude that the trial court erred in granting summary judgment to Atlanta Mission based on a contractual exculpatory clause.

*Judgment reversed. Branch, J. concurs. Boggs, J. concurs in judgment only.*